IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MCKINNEY/PEARL RESTAURANT          §
PARTNERS, L.P.,                    §
                                   §
          Plaintiff,               §
                                   §
V.                                 §          No. 3:14-cv-2498-B
                                   §
METROPOLITAN LIFE INSURANCE        §
COMPANY and CB RICHARD ELLIS,      §
INC.,                              §
                                   §
          Defendants.              §

## MEMORANDUM OPINION AND ORDER

Plaintiff McKinney/Pearl Restaurant Partners, L.P. d/b/a Sambuca ("Plaintiff"

or "Sambuca") has filed a Motion to Compel [Dkt. No. 77] (the "Motion to Compel"),

seeking to compel the production and organization of certain documents and metadata

from Defendants Metropolitan Life Insurance Company ("MetLife") and CBRE, Inc.

("CBRE"; with MetLife, "Defendants"). United States District Judge Jane J. Boyle

referred the motion to the undersigned United States magistrate judge for

determination. *See* Dkt. No. 79. Defendants responded, *see* Dkt. No. 90, and Plaintiff

filed a reply, *see* Dkt. No. 94. Plaintiff also filed a Motion for Leave to File Under Seal

Appendix in Support of Reply to Motion to Compel, seeking leave to a sealed Reply

Appendix [Dkt. No. 95-1]. *See* Dkt. No. 95.

Defendants also filed a Motion for Protective Order Regarding Requests for

Admissions and Request for Expedited Relief against Plaintiff McKinney/Pearl

Restaurant Partners, L.P. [Dkt. No. 81] (the "MPO"), seeking an order protecting Defendants from responding to any requests for admission that require expert opinions and from responding to more than 30 requests for admission. Judge Boyle referred this motion to the undersigned for determination. *See* Dkt. No. 83. The Court then set a briefing schedule and, "in light of the relief requested in Defendants' motion and to preserve the Court's ability to grant that relief, ... grant[ed] Defendants' request for expedited relief and order[ed] that Defendants' deadline for responding to Plaintiff's requests for admission is extended until ten days after the date on which the Court enters an order deciding the motion for protective order, subject to the Court's modifying this extended deadline in deciding the motion." Dkt. No. 84. Plaintiff then responded, *see* Dkt. No. 88, and Defendants filed a reply, *see* Dkt. No. 93.

The Court heard oral argument on the Motion to Compel and the Motion for Protective Order Regarding Requests for Admissions on January 6, 2016. *See* Dkt. No. 97.

For the reasons explained at oral argument, the Court GRANTS Plaintiff's Motion for Leave to File Under Seal Appendix in Support of Reply to Motion to Compel [Dkt. No. 95], grants Plaintiff leave to file the Reply Appendix [Dkt. No. 95-1] under seal, and will consider the materials in this appendix as appropriate in deciding the Motion to Compel. And, for the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Plaintiff's Motion to Compel [Dkt. No. 77] and DENIES Defendants' Motion for Protective Order Regarding Requests for Admissions [Dkt. No. 81].

## Background

The Court has previously summarized the background and allegations in this case based on Plaintiff's Third Amended Complaint, which will be recounted only in part here. *See* Dkt. No. 25 at 2-6.

Plaintiff "brings this action against Defendants based on MetLife's alleged deliberate and ongoing failure to fulfill its obligations under a commercial lease agreement and Defendants' repeated misrepresentations in furtherance of their scheme to drive Sambuca out of the leased premises, resulting in repeated and continuing injury to Sambuca." *Id.* at 2 (internal quotation marks omitted). Plaintiff "is a Texas limited partnership operating a restaurant at 2120 McKinney Avenue in Dallas, Texas. On October 6, 2003, Sambuca entered into a lease agreement (the 'Lease') with 2100 Partners, L.P. for a space of approximately 9,000 square feet located at 2120 McKinney Avenue in Dallas, Texas (the 'Leased Premises'). The Lease was for a ten-year term and provided for two five-year renewal options. Sambuca avers that '[s]hortly after entering the Lease, 2100 Partners, L.P. sold the Leased Premises to MetLife, who assumed the 'Landlord' obligations under the Lease. Sambuca explains that MetLife contracted with CBRE to serve as property manager of the Leased Premises." *Id.* (citations and internal quotation marks omitted).

Plaintiff "asserts that MetLife has refused to remedy the flawed and shifting structure in spite of its obligations under the Lease. Sambuca further maintains that both Defendants actively hid information from Sambuca and made repeated representations and assurances that the structural issues would be addressed,

knowing that Sambuca would rely on these representations. Additionally, Sambuca alleges that it has been the target of a concerted and wrongful attempt by Defendants to drive it out of the Leased Premises through purposeful delay and deception." *Id.* at 4-5 (citations and internal quotation marks omitted). "Accordingly, Sambuca asserts the following causes of action against Defendants: (1) breach of contract; (2) repudiation or anticipatory breach of contract; (3) breach of the warranty of quiet enjoyment; (4) fraud; (5) negligent misrepresentation; (6) civil conspiracy; and (7) aiding and abetting. Additionally, Sambuca demands: (1) specific performance; (2) declaratory judgment; and (3) rescission of the Lease renewal. Sambuca specifies that it seeks compensatory and exemplary damages, as well as attorneys' fees, costs, and interest. " *Id.* at 5 (citations omitted).

In the course of discovery in this case, Plaintiff served Defendants with several set of requests for production of documents. *See* Dkt. No. 82. Plaintiffs filed their Motion to Compel alleging that "Defendants have objected to and refused to produce clearly discoverable documents in response to multiple requests for production, relying on invalid boilerplate objections premised on relevance, breadth, undue burden, and confidentiality" and "have failed to produce electronic documents and information in accordance with Federal Rule of Civil Procedure 34, have failed to produce discoverable metadata, and have improperly redacted information from various responsive documents on the asserted basis of confidentiality, notwithstanding the existence of a confidentiality order." Dkt. No. 77 at 1. Plaintiff "requests that the Court overrule

Defendants' objections to Sambuca's requests for production [], require Defendants to produce the requested documents (including improperly redacted information and all metadata), and order Defendants to fully comply with Rule 34, including producing metadata for all documents." *Id.* at 2. Plaintiff also "requests that the Court order Defendants to pay Sambuca's expenses, including attorney fees, incurred in preparing this Motion." *Id.* at 23.

Plaintiff also served Defendants each with a set of 564 requests for admission pursuant to Federal Rule of Civil Procedure 36. *See* Dkt. No. 81 at 2. In their Motion for Protective Order Regarding Requests for Admissions, Defendants assert that "[m]any of the requests seek to have the Defendants admit or deny issues that are solely expert opinions on what caused a particular alleged property condition"; that "[o]ther requests cannot be answered because it is unclear what facts Sambuca is seeking to have admitted or denied"; that, "[b]ecause of the sheer number of the requests, it would take more than 50 hours of attorney time and potentially more expert witness time for the Defendants to fully respond to the requests"; and that, "[f]or these requests, Defendants request that the Court enter an order that protects Defendants from having to respond to requests that seek solely expert opinions or respond to more than 30 requests for admissions." *Id.* Defendants also request that the Court award them their costs and attorneys' fees incurred in bringing their Motion for Protective Order Regarding Requests for Admissions. *See id.* at 6.

**Legal Standards**

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34. *See* FED. R. CIV. P. 37(a)(3)(B)(iv). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

Under Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n,* 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). And a party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of his objection to a request, and, if he does not, he waives the objection. *See Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004). A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

Federal Rules of Civil Procedure Rules 26(b) and 26(c) have been amended, effective December 1, 2015. Rule 26(b)(1) now provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). And, as amended, Rule 26(c)(1)

authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending. The Court finds that applying the standards of Rule 26(b)(1), as amended, to Plaintiffs' motion to compel is both just and practicable. Plaintiff's Motion to Compel takes the position that it seeks documents relevant to the claims and defenses in this action, *see* Dkt. No. 77; Defendants assert that the amendments to Rule 26(b) should apply on the Motion to compel, *see* Dkt. No. 90 at 2-3 & n.1; and, in reply, Plaintiff asserts that, for purposes of its Motion to Compel, the amendments to Rule 26(b) effective December 1, 2015 do not "somehow alter[] Defendants' discovery obligations such that what had

been discoverable before December 1, 2015, was no longer so," Dkt. No. 94 at 5. And, as to Defendants' Motion for Protective Order, Defendants' motion was filed on December 10, 2015 after the amendments' effective date, does not invoke the additional "allocation of expenses" language added to Rule 26(c)(1), but does expressly invoke the provisions of Rule 26(b)(1) as amended. *See* Dkt. No. 81 at 2. Plaintiff's reliance in its response on the factors previously set forth in Federal Rule of Civil Procedure 26(b)(2)(C) and now incorporated into the proportionality factors in Rule 26(b)(1) does not make application of Rule 26(b)(1) as amended either unjust or impractical under the circumstances. *See* Dkt. No. 88 at 7; Dkt. No. 93 at 2.

Further, for the reasons the Court has recently explained, the Court concludes that the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr v. State Farm Mutual Automobile Insurance Company*, ___ F. Supp. 3d ____, No. 3:15-cv-1026-M, 2015 WL 8010920, at *3-*10 (N.D. Tex. Dec. 7, 2015). Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking discovery, to prevail on a motion to compel or resist a motion for protective order, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing. And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is subject to Rule 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of

the case, prior discovery in the case, the amount in controversy, and the importance

of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a

certification violates this rule without substantial justification." FED. R. CIV. P.

26(g)(1)(B), 26(g)(3); *see generally Heller v. City of Dallas*, 303 F.R.D. 466, 475-77, 493-

95 (N.D. Tex. 2014).

But the amendments to Rule 26(b) and Rule 26(c)(1) do not alter the basic

allocation of the burden on the party resisting discovery to – in order to prevail on a

motion for protective order or successfully resist a motion to compel – specifically object

and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of

relevance (as now amended) or that a discovery request would impose an undue burden

or expense or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303

F.R.D. at 483-93.

Under Federal Rule of Civil Procedure 36, "[a] party may serve on any other

party a written request to admit, for purposes of the pending action only, the truth of

any matters within the scope of [Federal Rule of Civil Procedure] 26(b)(1) relating to:

(A) facts, the application of law to fact, or opinions about either; and (B) the

genuineness of any described documents." FED. R. CIV. P. 36(a)(1).

Rule 36(a)(4) requires that, "[i]f a matter is not admitted, the answer must

specifically deny it or state in detail why the answering party cannot truthfully admit

or deny it." FED. R. CIV. P. 36(a)(4). "A denial must fairly respond to the substance of

the matter; and when good faith requires that a party qualify an answer or deny only

a part of a matter, the answer must specify the part admitted and qualify or deny the

rest." *Id.* Further, "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.* Rule 36(a)(5) requires that "[t]he grounds for objecting to a request must be stated" and that "[a] party must not object solely on the ground that the request presents a genuine issue for trial." FED. R. CIV. P. 36(a)(5).

Under Rule 36(a), when a request for admission is served, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney," although "[a] shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court." FED. R. CIV. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b).

The United States Court of Appeals for the Fifth Circuit has held that, "[i]n form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party. An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible. This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat

a party's claim." *Am. Auto. Ass'n, Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991) (internal quotation marks and footnotes omitted).

The Fifth Circuit has explained that "Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). "Such breadth allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters." *Id.* And "[t]he binding nature of judicial admissions conserves judicial resources by avoiding the need for disputatious discovery on every conceivable question of fact. Once a fact is formally admitted and thereby set aside in the discovery process, the party requesting an admission is entitled to rely on the conclusiveness of it." *Armour v. Knowles*, 512 F.3d 147, 154 n.13 (5th Cir. 2007) (internal quotation marks omitted).

"For Rule 36 to be effective in this regard, litigants must be able to rely on the fact that matters admitted will not later be subject to challenge." *Carney*, 258 F.3d at 419. "Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." *Am. Auto. Ass'n*, 930 F.2d at 1121 (internal quotation marks omitted).

But case law in this circuit also suggests that "[r]equests for admissions cannot be used to compel an admission of a conclusion of law" and that "Rule 36 should not be employed to establish facts that are obviously in dispute." *Carney*, 258 F.3d at 419 (internal quotation marks omitted).

-13-

The Federal Rules do not set a limit on the number of requests for admission that a party may serve under Rule 36. *See generally* FED. R. CIV. P. 36. But Federal Rule of Civil Procedure 26(b)(2)(A) provides that, "[b]y order or local rule, the court may also limit the number of requests under Rule 36." FED. R. CIV. P. 26(b)(2)(A). And Rules 26(b) and 26(c) together grant the Court broad discretion to control and, as appropriate, limit the scope and volume of discovery, including requests for admission. *See generally Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A). Rule 37(a)(5)(B)-(C) further provide in pertinent part that, "[i]f the motion is denied, the court ... must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the

court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

And Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26(c) for a protective order, Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

### Analysis

I. <u>Plaintiff's Motion to Compel</u>

    A. Requests Related to Appraisals and Valuations (Request Nos. 72, 73, 74, and 75 in Plaintiff's First Request for Production to MetLife; Request Nos. 41 and 42 in Plaintiff's Second Request for Production to MetLife; Request Nos. 1, 2, 3, 4, and 5 in Plaintiff's Third (served as second) Request for Production to MetLife; Request Nos. 1, 2, 3, 4, 5, 6, and 7 in Plaintiff's Second Request for Production to CBRE)

As to these requests listed above, the Court grants the Motion to Compel only in part. In response to the requests listed above, Defendants must each produce any responsive document or electronically stored information ("ESI") that is within its possession, custody, or control that relates to the restaurant building (the "Leased Premises") or that relates to the development as a whole and therefore necessarily includes the Leased Property, even if it does not specifically discuss or address it.

Defendants are not required to produce documents that related only to the tower building at 2100 McKinney Avenue. After considering the parties' arguments and submissions and the requests at issue in relation to the claims and defenses and the

issues at stake, the Court concludes that discovery through these requests as to the tower building only falls outside the proper scope of discovery under Rule 26(b)(1).

But, as discussed with counsel at oral argument, Defendants cannot properly redact nonprivileged information from any responsive document, and the parties must meet and confer by **January 15, 2016** to reach agreement on modifications to the Agreed Confidentiality Order in effect in this case to add an additional level of "Attorneys' Eyes Only" protection to cover Defendants' concerns that led to its producing redacted, responsive documents. Once a modified confidentiality order is entered, Defendants must produce any documents previously produced with redactions based on confidentiality or other non-privilege-based reasons within 7 days of entry of the modified order.

Defendants' counsel explained at oral argument that Defendants did not impose a time limit of 2011 to the present on certain requests but, in their responses, were simply explaining that the only responsive documents within their possession, custody, or control dated from 2011 to the present. Accordingly, Plaintiffs' complaint in this regard is overruled.

And, subject to Defendants' Federal Rule of Civil Procedure 26(e)(1) supplemental obligations, the Court grants Defendants a protective order from further production in response to these requests except insofar as the Court has granted the Motion to Compel as explained above.

> B.   Requests Related to Meetings (Request Nos. 1, 2, and 3 in Plaintiff's Third Request for Production to MetLife; Request Nos. 1, 2, and 3 in Plaintiff's Third Request for Production to CBRE)

As to these requests listed above, the Court grants the Motion to Compel entirely. In response to the requests listed above, Defendants must each produce any responsive document or ESI that is within its possession, custody, or control. After considering the parties' arguments and submissions and the requests at issue in relation to the claims and defenses and the issues at stake, the Court concludes that discovery sought through these requests falls within the proper scope of discovery under Rule 26(b)(1) and is proportional to the needs of the case.

C.     Requests Related to Purchase (Request Nos. 103 and 104 in Plaintiff's
       First Request for Production to MetLife)

As to these requests listed above, the Court denies the Motion to Compel entirely and sustains MetLife's objections. After considering the parties' arguments and submissions and the requests at issue in relation to the claims and defenses and the issues at stake, the Court finds that the only discovery sought through these requests that falls within the proper scope of discovery under Rule 26(b)(1) is that which MetLife has agreed to produce and represents that it already has produced. Accordingly, subject to MetLife's Rule 26(e)(1) supplemental obligations, the Court grants MetLife a protective order from further production in response to these requests.

D.     Requests Related to Offers to Purchase/Potential Purchasers (Request
       Nos. 97 and 99 in Plaintiff's First Request for Production to MetLife), and
       Request Related to Future Plans/Proposals (Request No. 96 in Plaintiff's
       First Request for Production to MetLife)

As to these requests listed above, the Court grants the Motion to Compel only in part. In response to the requests listed above, MetLife must produce any responsive

document or ESI that is within its possession, custody, or control that relates to the restaurant building (the "Leased Premises") or that relates to the development as a whole and therefore necessarily includes the Leased Property, even if it does not specifically discuss or address it. MetLife is not required to produce documents that related only to the tower building at 2100 McKinney Avenue. After considering the parties' arguments and submissions and the requests at issue in relation to the claims and defenses and the issues at stake, the Court concludes that discovery through these requests as to the tower building only falls outside the proper scope of discovery under Rule 26(b)(1). Accordingly, subject to MetLife's Rule 26(e)(1) supplemental obligations, the Court grants MetLife a protective order from further production in response to these requests except insofar as the Court has granted the Motion to Compel as explained above.

> E. Requests Related to Speculative Leasing Schedules (Request No. 9 in Plaintiff's Third Request for Production to MetLife; Request No. 9 in Plaintiff's Third Request for Production to CBRE), and Requests Related to Rent Reductions, Financial Assistance, and Rent Concessions or Modifications (Request Nos. 5, 6, 7, 10, and 11 in Plaintiff's Third Request for Production to MetLife; Request Nos. 5, 6, 7, 10, and 11 in Plaintiff's Third Request for Production to CBRE; Request No. 60 in Plaintiff's First Request for Production to CBRE)

As to these requests listed above, the Court denies the Motion to Compel entirely and sustains Defendants' objections. After considering the parties' arguments and submissions and the requests at issue in relation to the claims and defenses and the issues at stake, the Court finds that the only discovery sought through these requests that falls within the proper scope of discovery under Rule 26(b)(1) is that which

Defendants have agreed to produce and represent that they already have produced. After carefully considering the parties' arguments in their briefing and at oral argument, the Court does not find that evidence of potential disparate treatment of Sambuca and tenants in the tower building is relevant to the claims or defenses in this case. Accordingly, subject to Defendants' Rule 26(e)(1) supplemental obligations, the Court grants Defendants a protective order from further production in response to these requests.

F.      Requests Related to Occupancy Levels (Request No. 12 in Plaintiff's Third Request for Production to MetLife; Request No. 12 in Plaintiff's Third Request for Production to CBRE), and Requests Related to Capital Expenditures and Budgets (Request No. 14 in Plaintiff's Third Request for Production to MetLife; Request No. 61 in Plaintiff's First Request for Production to CBRE; Request No. 14 in Plaintiff's Third Request for Production to CBRE)

As to these requests listed above, the Court grants the Motion to Compel entirely. In response to the requests listed above, Defendants must each produce any responsive document or ESI that is within its possession, custody, or control. After considering the parties' arguments and submissions and the requests at issue in relation to the claims and defenses and the issues at stake, the Court concludes that discovery sought through these requests falls within the proper scope of discovery under Rule 26(b)(1) and is proportional to the needs of the case. To the extent that MetLife or CBRE believes that any responsive information requires "Attorneys' Eyes Only" protection, any responsive documents containing such materials must be produced within 7 days of entry of a modified confidentiality order, as discussed above.

J.      Requests Related to Structural System (Request Nos. 43 and 44 in Plaintiff's Second Request for Production to MetLife; Request No. 53 in Plaintiff's First Request for Production to CBRE)

As to these requests listed above, the Court grants the Motion to Compel only in part as to Request No. 43 in Plaintiff's Second Request for Production to MetLife and denies the Motion to Compel entirely as to Request No. 44 in Plaintiff's Second Request for Production to MetLife and Request No. 53 in Plaintiff's First Request for Production to CBRE.

In response to Request No. 43, MetLife must produce any responsive document or ESI that is within its possession, custody, or control that relates to a lease for a property that is located within 50 miles of 2100 McKinney Avenue and that is either a stand-alone property or a property at, or including space at, surface level. To the extent that MetLife believes that any responsive information requires "Attorneys' Eyes Only" protection, any responsive documents containing such materials must be produced within 7 days of entry of a modified confidentiality order, as discussed above.

After considering the parties' arguments and submissions and the requests at issue in relation to the claims and defenses and the issues at stake, the Court concludes that any other discovery sought through these requests falls outside the proper scope of discovery under Rule 26(b)(1) and would present an undue burden that outweighs its likely benefit. Accordingly, the Court grants MetLife a protective order from any production in response to Request No. 44 in Plaintiff's Second Request for Production to MetLife, grants CBRE a protective order from any production in response to Request No. 53 in Plaintiff's First Request for Production to CBRE, and

grants MetLife a protective order from further production in response to Request No. 43 in Plaintiff's Second Request for Production to MetLife except insofar as the Court has granted the Motion to Compel as explained above.

K.      Defendants' Compliance with Rule 34, Production of Discoverable Metadata, and Production of Native Documents

Plaintiffs also contend that Defendants have not produced ESI as it is kept in the ordinary course of business or organized and labeled such responsive information to correspond to the categories in Sambuca's requests for production as required by Rule 34 and that, although Defendants have suggested that they have produced responsive documents as they are ordinarily kept, that is clearly not the case where Defendants did not forensically copy the documents produced as would be required to include complete and original metadata, such as metadata concerning the original file structure, and where the original file structure information is not present in Defendants' production. *See* Dkt. No. 77 at 20. Plaintiff also complains that, aside from the failure to produce documents as ordinarily kept, Defendants failed to produce discoverable metadata and also failed to produce many documents in their native formats. *See id.* at 21-22. Finally, Plaintiffs contend that an examination of Defendants' productions reveals many documents have not been produced from their originally stored or primary location. *See id.* at 22.

Defendants responded by submitting affidavits from MetLife and CBRE personnel, attesting that "CBRE searched for and collected documents from its email servers, network shared drives, individual computers, and hard copy file storage"; that

"CBRE collected and produced the hard copy documents in the form in which they are kept in the usual course of business"; that "[e]lectronic documents were collected and produced in the format in which they are stored on CBRE's servers and network folders"; that "MetLife collected emails from relevant custodians, searched the individual computers of relevant custodians, searched the company's shared network drives, and collected responsive hard copy documents"; that, "[f]or the hard copy documents, MetLife compiled them in the form in which they are kept in the usual course of business"; that, "[f]or the electronic documents, MetLife compiled them as they are stored on its servers and network folders"; and that "MetLife also provided metadata for the documents produced." Dkt. No. 91 at 4, 8; *see also* Dkt. No. 90 at 21 ("With respect to ESI, Defendants compiled documents from their computer systems and email servers and provided them in the manner they are kept electronically and in searchable form with metadata." (footnote omitted)). And Defendants' counsel submitted an affidavit attesting that, "[b]ased on my discussions with Defendants' e-discovery vendors and my own review of Defendants' productions, it is my understanding that Defendants have produced ESI in a searchable and sortable form, paired with relevant metadata, and including load files." Dkt. No. 91 at 16.

Federal Rule of Civil Procedure 34(b)(2)(E) provides as follows: "Producing the Documents or Electronically Stored Information. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information: (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in

the request; (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and (iii) A party need not produce the same electronically stored information in more than one form." FED. R. CIV. P. 34(b)(2)(E).

Courts are split on whether both Rule 34(b)(2)(E)(i) and Rule 34(b)(2)(E)(ii) apply to ESI productions or whether an ESI production must comply with only Rule 34(b)(2)(E)(ii). *Compare, e.g.*, *Ark. River Power Auth. v. Babcock & Wilcox Power Generation Group, Inc.*, Civ. A. No. 14-cv-00638-CMA-NYW, at *9-*13 (D. Colo. May 5, 2015); *Anderson Living Trust v. WPX Energy Prod., LLC*, 298 F.R.D. 514, 520-27 (D.N.M. 2014), *with, e.g.*, *F.D.I.C. v. Bowden*, No. CV413-245, 2014 WL 2548137, at *3-*4 (S.D. Ga. June 6, 2014); *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 582-84 (C.D. Cal. 2011). The Court finds persuasive the analysis that, where Rule 34(b)(2)(E)(i) addresses the organization of a production and Rule 34(b)(2)(E)(ii) specifically addresses the form for producing ESI (where form of production is inherently not an issue with hard-copy documents), and in light of the purposes of the 2006 amendments to Rule 34 and of Rule 34(b)(2)(E)(i)'s requirements, Rules 34(b)(2)(E)(i) and 34(b)(2)(E)(ii) should both apply to ESI productions. *See Bowden*, 2014 WL 2548137, at * 4; *City of Colton*, 277 F.R.D. at 584-85; *accord Chet Morrison Contrs., Inc. v. Medco Energi US LLC*, No: 08-1638, 2009 WL 2762049, at * 2 (E.D. La. Aug. 25, 2009) ("As to digital documents or other electronically stored information, '[a] party must produce documents as they are kept in the usual course of business or must

organize and label them to correspond to the categories in the request.'" (quoting FED. R. CIV. P. 34(b)(2)(E)(i)).

Here, Defendants have each presented competent evidence that they each, as a general matter, produced ESI as it is kept in the usual course of business and in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms. The Court does not accept Plaintiff's assertion that a forensic copy of a computer system or server is always required for a party to produce ESI as it is kept in the usual course of business. Indeed, ordering forensic imaging or examination of a computer system or server or other electronic storage device generally requires a very particular showing. *See, e.g.*, *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, Civ. A. No. 12-2512, 2013 WL 3974535, at *2-*3 (E.D. La. Aug. 2, 2013). Rather, the Court finds instructive the extensive discussion of these requirements by another court in *Teledyne Instruments, Inc. v. Cairns*, No. 6:12-cv-854-Orl-28TBS, 2013 WL 5781274 (M.D. Fla. Oct.25, 2013):

> [Rule 34(b)(2)(E)(i)'s] production log requirement was added to the Federal Rules of Civil Procedure to prevent part[ies] from obscuring the significance of documents by giving some structure to the production. It forbids "dump truck" discovery tactics, where a party delivers voluminous and poorly organized documents to his adversary, who is forced to rummage through piles of paper in search of what is relevant. To comply with the rule, a party must rationally organize[ ] its productions, so that the requesting party may readily identify documents, including ESI, that are responsive to [the] production requests.
> ....
> Because businesses have an incentive to keep their documents in a manner that allows ready access, a production of documents as kept in the ordinary course of business should permit a systemized retrieval of relevant documents. This requires a party to organize its production in such a way as to enable the requesting party to substantially replicate

-24-

the system used by the producing party, whether the production is ESI or paper documents. For example, if a party keeps responsive documents or ESI "in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." FED. R. CIV. P. 34, Advisory Committee Notes, 2006 Amend.

The most obvious means of complying with the [usual course of business requirement] is to permit the requesting party to inspect the documents where they are maintained, and the manner in which they are organized by the producing party. For documents stored electronically, producing a forensic duplicate of a storage device is also sufficient. If a party chooses to produce files but not the devices (or forensic copies of the devices) on which the files are stored, the manner of production determines whether the files are produced as they are kept in the usual course of business. To satisfy the usual course of business requirement, the mode of production should preserve the functional utility of the electronic information produced. As the following discussion shows, this normally requires (1) preserving the format of the ESI and (2) providing sufficient information about the context in which it is kept and used.

Production "as kept in the ordinary course of business" generally requires turning over electronic documents in the format in which they are kept on the user's hard drive or other storage device. A file that is converted to another format solely for production, or for which the application metadata has been scrubbed or altered, is not produced as kept in the ordinary course of business. If a document is maintained on a hard drive or in a storage device in the form in which it is created and edited (its "native" format, in the technical sense of the term), it must be produced in native format to be produced as it is kept in the ordinary course of business. Preservation of format is important because conversion from native format may eliminate or degrade search and other information processing features (e.g., copy, paste, and sort). Such features may allow a user to identify relevant information in a document much more quickly, which would significantly enhance the value of a document to a business. Allowing a party to defeat this functionality would undermine the purpose of producing information as it is kept in the usual course of business.

Second, the producing party must provide information about where the documents are kept and how they are organized. For documents stored on a computer or external storage device, this means providing system metadata indicating at least the file name and path for produced files. The files and system metadata, must be organized in a manner that "permits systemized retrieval" of files based on the metadata. In other

words, the requesting party must be able to search for and readily access files with particular characteristics (e.g. all .doc files in X folder).

For emails, the relevant context is somewhat different. A user typically views emails not in a file browser, but in an email client. While the relevant organizational information for files viewed in a file browser is file name and path, the relevant information in an email client is the date the email was transmitted, perhaps along with the parties to the email (sender and recipients), and the subject line.

*Id.* at *8-*10 (citations, internal quotation marks, and footnotes omitted).

Measured against this standard, Defendants' affidavit evidence establish that their productions generally comply with Rule 34(b)(2)(E)(i)'s and Rule 34(b)(2)(E)(ii)'s requirements. CBRE presented sworn testimony that it collected and produced its electronic documents in the format in which they are stored on its servers and network folders, and MetLife presented sworn testimony that it compiled its electronic documents as they are stored on its servers and network folders. This partially satisfies Rule 34(b)(2)(E)(i)'s requirement to produce documents as they are kept in the usual course of business by producing ESI in the format in which it is kept or stored on the user's system or storage device. Defendants also submitted sworn testimony that they each produced ESI in a searchable and sortable form, paired with relevant metadata, and including load files, which satisfies Rule 34(b)(2)(E)(ii)'s requirement to – where (as here) no form for producing ESI is specified – produce ESI in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

But it is not clear if Defendants' productions have provided information about where the ESI is kept and how it is organized, including particularly, for documents stored on a computer or external storage device, system metadata indicating at least

the file name and path for produced files and possibly the custodian of the files. Plaintiff asserts that "[t]he original file structure information is not present in Defendants' production," Dkt. No. 77 at 20, and that the produced electronic "documents do not include the original file names," Dkt. No. 94 at 9. To the extent that Defendants have not provided the required information about where the ESI is kept and how it is organized, they must do so to comply with Rule 34(b)(2)(E)(i)'s requirements – or must, alternatively, organize and label their ESI productions to correspond to each request.

Otherwise, there is no evidence, in the face of Defendants' sworn affidavits, that Defendants failed in their obligations to comply with Rule 34(b)(2)(iii)'s requirement to produce at least one copy of each document or electronically stored information and, except as required to comply with Rule 34(b)(2)(E)(i) as described above, any obligation to produce relevant metadata to the extent required by Plaintiffs' requests. *See generally XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, Civ. A. No. 12-2071, 2014 WL 295053, at *5 (E.D. La. Jan. 27, 2014). To the extent that Plaintiff has encountered any technical difficulties with the metadata and load files produced by Defendants, Plaintiff's counsel and Defendants' counsel should confer and work cooperatively to address those issues.

Accordingly, except insofar as the Court has ordered that Defendants must reproduce (in compliance with Rule 34(b)(2)(E)) any documents that were produced with non-privilege-based redactions and must provide additional information to comply

with Rule 34(b)(2)(E)(i)'s requirements for their ESI productions, the Court denies Plaintiffs' Motion to Compel on these grounds.

II.  <u>Defendants' Motion for Protective Order Regarding Requests for Admissions</u>

Defendants seek a protective order as to Plaintiff's requests for admission on two grounds. Defendants first assert that the sheer number of requests alone provides sufficient grounds for the Court to enter a protective order where the requests seek to have Defendants individually analyze hundreds of individual photographs of alleged defects and attempt to determine the causes of those defects and where that the requests are unduly burdensome because it would take more than 50 hours of attorney time and potentially more expert witness time for the Defendants to fully respond to the requests. *See* Dkt. No. 81 at 2, 3-5. Defendants also assert that "[a]ll of the requests seek an opinion on the cause of a particular condition at the property – issues that are directed solely at expert witnesses" – and that requests for admission that "seek expert opinions are not proper." *Id.* at 2, 5-6.

At oral argument, Defendants' counsel explained that, if the Court accepts the second ground for Defendants' motion, the Court should grant a protective order relieving Defendants from responding to any of Plaintiffs' requests for admission and that, if the Court accepts only the first ground for Defendants' motion, the Court should enter an order that protects Defendants from responding to more than 30 requests for admission. The Court will therefore take the second ground up first.

Defendants assert that "[a]lmost all of the requests ask the Defendants to admit whether slab movement, a shifting foundation, or movement of a 'grade beam'

contributed to a condition (a crack in a floor or a wall, an unknown gas leak, an unspecified roof leak, etc.)"; that "Sambuca is not asking whether the condition exists (i.e., a fact that can be admitted or denied after an inspection of the property)" but rather "is asking MetLife and CBRE what caused or contributed to a condition on property that is not in the possession of either MetLife or CBRE"; and that "Sambuca, as the tenant, has exclusive possession of the property" and, "[i]n essence," "wants MetLife and CBRE to look at a photograph (or in some cases guess the areas at issue), try to determine what exactly is at issue in the photograph (easier with some photos than others), try to determine the exact location of the condition, and then meet with its experts and clients to respond to each of the 564 requests." Dkt. No. 81 at 5-6 (footnotes omitted).

Relying on the decisions in *Emerson v. Lab. Corp. of Am.*, Civ. A. No. 1:11-CV-01709-RWS, 2012 WL 1564683, at *3-*4 (N.D. Ga. May 1, 2012), and *Williamson v Correctional Med. Servs.*, Civ. No. 06-379-SLR, 2009 WL 1364350, at *3 (D. Del. May 14, 2009), Defendants contend that a Rule 36 request seeking an expert opinion is improper under the Federal Rules and that the Court should enter an order protecting Defendants from responding to Plaintiffs' requests for admission that seek expert opinions on the cause of a particular property condition – that is, all of the requests in Plaintiffs' Second Requests for Admissions to Defendants. *See id.* at 6.

The court in *Emerson* concluded that the requests for admission in that case "require disclosure of expert opinions" and that the requests therefore were "improper under the Federal Rules and th[e] Court's Scheduling Order." 2012 WL 1564683, at *4.

The court explained that, "[t]o the extent the requested opinions are held by non-testifying or consulting experts, whom LabCorp has retained only in anticipation of the litigation and not to testify at trial, they can only be discovered upon a showing of exceptional circumstances." *Id.* (citing FED. R. CIV. P. 26(b)(4)(D)). And the Court concluded that, "[t]o the extent the requested opinions are held by testifying experts, these opinions can only be discovered through expert reports, under Federal Rule [of Civil Procedure] 26(a)(2), or through depositions, under Federal Rule [of Civil Procedure] 26(b)(4)(A)," and that, "[f]urthermore, these disclosures must be made 'at the time and in the sequence that the court orders.'" *Id.* (quoting FED. R. CIV. P. 26(a)(2)(D)). The Court determined that, in that case, "Plaintiffs at this time are not entitled to disclosure of any opinions held by LabCorp's testifying experts," where, "[p]ursuant to the Scheduling Order in place in this case, the expert witness reports that must be disclosed under Federal Rule 26(a)(2) are not due until 30 days after the close of fact discovery, May 14, 2012." *Id.* (internal quotation marks and citation omitted).

The Court in *Williamson* noted that, in that case, certain requests for admission "were objected to as they called for expert opinions and after a reasonable inquiry defendant was unable to admit or deny a request"; that the deadline to complete discovery had not yet passed "and, to date, no experts have been identified"; and that "Rule 36(a)(4)'s requirement of 'reasonable inquiry' extends to third parties, if there exists sworn deposition testimony of such third party." 2009 WL 1364360, at *3 (citing *Diederich v. Dep't of Army*, 132 F.R.D. 614, 620 (S.D.N.Y. 1990)). The Court sustained

most of the "objections based upon expert testimony and reasonable inquiry," noting that "most of the requests required defendant to obtain responses from third parties" and that "[i]t does not appear that, at the time the requests for admission were served upon defendant, experts had been identified or there were sworn statements or testimony from parties or witnesses." *Id.*

As Plaintiff notes in opposition to Defendants' motion, other courts have rejected an argument that a Rule 36 request requiring a party to consult with an expert witness is improper. One court considered a similar argument and concluded that "the better rule is that an answering party must conduct a reasonable inquiry and answer a [request for admission] if the information is readily obtainable, even though the answering party has no personal knowledge of the facts," and ordered that the plaintiffs in that case "are directed to supplement their response [to the request at issue]," even though "plaintiffs must consult with their expert prior to supplementing said response." *Drutis v. Rand McNally & Co.*, 236 F.R.D. 325, 330-31 (E.D. Ky. 2006). Another, more recent decision reviewed related case law, including the *Emerson* decision, and rejected a similar objection, following the earlier decision in *House v. Giant of Maryland, LLC*, 232 F.R.D. 257, 258 (E.D. Va. 2005). *See Baugh v. Bayer Corp.*, No. 4:11-cv-525-RBH, 2012 U.S. Dist. LEXIS 131867, *8-*9 n.3 (D.S.C. Sept. 17, 2012). The court in *Baugh* noted that the *House* court explained that, in that earlier case, "defendants' response to certain of plaintiff's requests for admission was that it could not either admit or deny the requests because the requests required expert testimony," that the *House* "court found that defendants' responses were inadequate

and concluded defendants' 'answers reflect folklore within the bar which holds that requests for admission need not be answered if the subject matter of the request .... 'addresses a subject for expert testimony,'" and that the *House* "court went on to explain that 'the folklore is wrong.'" *Baugh*, 2012 U.S. Dist. LEXIS 131867, *8-*9 n.3 (quoting *House*, 232 F.R.D. at 258).

The Court likewise concludes that, where, as here, an answering party has already retained experts and disclosed its testifying expert witnesses, a Rule 36 request is not improper simply because responding to it may require the answering party to consult with its experts. Rule 36 requests are directed to a party to request that the party "admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." FED. R. CIV. P. 36(a)(1). The answering party "may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." FED. R. CIV. P. 36(a)(4). Information readily obtainable by a party includes that which can be gained by consulting with an expert who has already been retained. *Accord Kay v. Lamar Adver. of S.D., Inc.*, No. 07-5091-KES, 2008 U.S. Dist. LEXIS 100645, at *16 (D.S.D. Dec. 12, 2008). That is, timely responding to these requests does not require Defendants to, for example, seek out a third party who has not already been brought within the scope of the litigation by way of deposition or to locate and identify an expert who is not already retained for

this case. Indeed, at oral argument, Defendants' counsel acknowledged that Defendants do not assert that the information necessary to respond to Plaintiffs' requests for admission is not readily obtainable from their experts.

As the court in *Emerson* noted, Federal Rule of Civil Procedure 26(b)(2)(D)(4) does provide that, "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" and "may do so only: (i) as provided in [Federal Rule of Civil Procedure] 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." FED. R. CIV. P. 26(b)(4)(D). And Federal Rule of Civil Procedure 26 does impose some limits on discovery of another party's testifying expert's opinions, through expert reports under Federal Rule 26(a)(2) and depositions under Federal Rule 26(b)(4)(A). *See* FED. R. CIV. P. 26(a)(2)(B) ("Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v)

a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case."); FED. R. CIV. P. 26(a)(2)(B) ("A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.").

But those rules limit discovery targeted directly to or about an expert or the expert's knowledge or opinions. Rule 36 requests, like those here, are properly directed to a party's position on a fact or the application of law to fact or the party's opinion about a fact or the application of law to fact – and can address ultimate facts that may present a genuine issue for trial. The party's position on a factual question may well be informed by consultation with a retained expert. But an expert's knowledge or opinions, on the one hand, and a party's position on a fact or the application of law to fact or opinion about either, on the other, are separate objects of discovery. Rule 26(b)(4) addresses discovery of the former, and Rule 36 requests address the latter. And, further highlighting this conceptual difference, an expert's opinion or position on a fact and a party's position or opinion as to the same factual question may not be the same – for lack of a better phrase – as a factual matter. Indeed, a party's position and its expert's view or opinion on the same matter do not always line up at all – a sometimes vexing phenomenon to which many experienced trial lawyers can attest.

Rule 26 no more prohibits a party from asking another party for an admission on an ultimate fact as to which an expert witness may testify or on which a non-

testifying expert may consult with the answering party than it prohibits a contention interrogatory to a party directed to the same matter. In short, a party cannot avoid discovery – whether by an interrogatory, a Rule 36 request, or Federal Rule of Civil Procedure 30(b)(6) deposition testimony – of its own views on a factual matter in dispute (or perhaps, in fact, not in dispute) simply because its view on that matter may be informed by consulting with its retained experts. As other courts have observed, "[e]ven if complete answers to discovery requests may require the answering party to consult with experts, such considerations do not transform permissible factual discovery into 'expert discovery.'" *Geer v. Cox*, No. 01-2583-JAR, 2003 WL 21254731, at *3 (D. Kan. May 21, 2013) (footnote omitted); *Cook v. Rockwell Int'l Corp.*, 161 F.R.D. 103, 106 (D. Colo. 1995).

Accordingly, the Court overrules Defendants' objections to Plaintiffs' requests for admission on the ground that they require expert testimony and denies Defendants' request for a protective order on this basis.

As to Defendants' first ground for seeking a protective order, the Court does not believe that there is any particular absolute number of Rule 36 requests that will be excessive across every case. *See generally Gen. Elec. Co. v. Prince*, No. 06 Civ. 0050 SAS MHD, 2007 WL 86940, at *2 (S.D.N.Y. Jan. 10, 2007) (noting "that the large number of requests to admit is not in itself a basis for a protective order"). 564 is, no doubt, a lot of requests for admission, but whether it is too many depends on the particular circumstances presented.

And, just as Defendants do not contend that they cannot readily obtain the information required to answer these requests for admission, Defendants do not deny that these requests seek indisputably relevant information. As Plaintiff explains, "the requests ask Defendants to admit whether slab movement, a shifting foundation, or movement of a grade beam contributed to the condition depicted in each of the photographs," "thereby specifically elucidating Defendants' position with respect to each of the identified defective conditions," and "[i]t was necessary for Sambuca to ask three different questions for each photograph due to Defendants' asserted defense that there should be a differentiation between the slab and the grade beam in defining structural system in connection with MetLife's Lease obligations and related promises." Dkt. No. 88 at 3-4. Plaintiffs contend that, "[i]n order to fully understand Defendants' positions and the nature of Defendants' defenses, Sambuca is asking Defendants direct questions as to each identified defect – the central issue in the case – that go to the nature of the defect and Defendants' position with respect to such defect under the pertinent terms of the Lease and in connection with Defendants' prior promises and assurances made the subject of Sambuca's fraud and civil conspiracy claims." *Id.* at 4. Plaintiff reports that, "[f]or efficiency, [it] asks these questions as requests for admission rather than deposing a single witness on each of the items requested" and that its "requests for admission seek to eliminate certain issues from the case, thereby narrowing both the amount of discovery and the volume of contested facts to be tried at trial." *Id.* at 4, 7 (footnote omitted).

-36-

The Court has carefully considered Defendants' evidence of burden and expense and the number of Rule 36 requests that Plaintiff served on Defendants. After considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information and resources, the importance of these requests in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit, the Court finds that requiring Defendants to respond to all of these requests entails a likely benefit that outweighs the burden and expense involved in Defendants' each responding to the 564 requests for admission and that, though numerous, these requests are proportional to the needs of the case. In short, for the reasons that Plaintiff has well described, these requests are the sort of well-parsed, discrete questions about relevant facts that present the likely benefit of facilitating proof as to the issues in this case and of narrowing its triable issues. As other courts have observed when facing similar objections, "[a]lthough it is true that the requests encompass many separate items, this is a function of the fact that the issues in this case encompass a large number of discrete" conditions at the property at issue. *Sequa Corp. v. Gelmin*, No., 1993 WL 350029, at *1 (S.D.N.Y. Sept. 7, 1993). And, under the particular circumstances here, denying Plaintiff "the procedures made available by Rule 36 could not only prejudice [its] ability to try [its] case in the shortest and clearest possible way, but also compel the court to waste some of its limited resources in sitting through unnecessary trial days." *Id.*

Accordingly, the Court overrules Defendants' objections to Plaintiffs' requests for admission on the grounds of their sheer number and the burden and expense involved in responding and denies Defendants' request for a protective order on this basis.

For these reasons, the Court DENIES Defendants' Motion for Protective Order Regarding Requests for Admissions [Dkt. No. 81] and ORDERS that Defendants must each respond to Plaintiffs' Second Requests for Admissions directed to it by **January 22, 2016**.

III.   <u>Requests for Expenses</u>

In light of the relief awarded above and the Court's consideration of the parties' respective positions in connection with Plaintiff's Motion to Compel and Defendants' Motion for Protective Order Regarding Requests for Admissions, the Court determines that, under Federal Rules of Civil Procedure 26(c)(3) and 37(a)(5), each party will bear its own costs in connection with these motions.

## Conclusion

The Court GRANTS in part and DENIES in part Plaintiff's Motion to Compel [Dkt. No. 77] and DENIES Defendants' Motion for Protective Order Regarding Requests for Admissions [Dkt. No. 81]. Defendants Metropolitan Life Insurance Company and CBRE, Inc are ORDERED to produce the responsive documents or electronically stored information as explained above by **January 29, 2016**. Defendants Metropolitan Life Insurance Company and CBRE, Inc are each further ORDERED to

respond to Plaintiffs' Second Requests for Admissions directed to it by **January 22, 2016**.

SO ORDERED.

DATED: January 8, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE