IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MCKINNEY/PEARL RESTAURANT PARTNERS, L.P., | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:14-cv-2498-B |
| METROPOLITAN LIFE INSURANCE COMPANY, CBRE, INC., and MCPP 2100 MCKINNEY, LLC, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff McKinney/Pearl Restaurant Partners, L.P. d/b/a Sambuca ("Plaintiff or "Sambuca") has filed a Motion to Quash and for Protective Order Regarding Defendants' Notice of Rule 45 Subpoenas Issued to Attorneys [Dkt. No. 131] (the "MPO"), seeking an order under Federal Rules of Civil Procedure 26(c) and 45 to quash the subpoenas for depositions and documents requested by Defendants Metropolitan Life Insurance Company ("MetLife"), CBRE, Inc. ("CBRE"), and MCPP 2100 McKinney, LLC ("MCPP"; collectively, with MetLife and CBRE, "Defendants").

United States District Judge Jane J. Boyle referred the motion to the undersigned United States magistrate judge for determination. *See* Dkt. No. 134.

Defendants filed a response, *see* Dkt. No. 137, and Plaintiff filed a reply, *see* Dkt. No. 149.

-1-

Wesley J. Bailey later filed a Joinder in Plaintiff's Motion to Quash and for Protective Order Regarding Defendants' Notice of Rule 45 Subpoenas Issued to Attorneys, *see* Dkt. No. 141 (the "Joinder"), which Judge Boyle also referred, *see* Dkt. No. 145. Plaintiff then filed a response to the Joinder. *See* Dkt. No. 155.

The Court heard oral argument on the MPO and Joinder on May 5, 2016. *See* Dkt. No. 160.

For the reasons and to the extent explained at oral argument and below, the Court DENIES Plaintiff's Motion to Quash and for Protective Order Regarding Defendants' Notice of Rule 45 Subpoenas Issued to Attorneys [Dkt. No. 131] and DENIES Wesley J. Bailey's Joinder in Plaintiff's Motion to Quash And for Protective Order Regarding Defendants' Notice of Rule 45 Subpoenas Issued to Attorneys [Dkt. No. 141].

## Background

The Court has previously summarized the background and allegations in this case based on Plaintiff's Third Amended Complaint, which will be recounted only in part here. *See* Dkt. No. 25 at 2-6.

Plaintiff "brings this action against Defendants based on MetLife's alleged deliberate and ongoing failure to fulfill its obligations under a commercial lease agreement and Defendants' repeated misrepresentations in furtherance of their scheme to drive Sambuca out of the leased premises, resulting in repeated and continuing injury to Sambuca." *Id.* at 2 (internal quotation marks omitted). Plaintiff "is a Texas limited partnership operating a restaurant at 2120 McKinney Avenue in

Dallas, Texas. On October 6, 2003, Sambuca entered into a lease agreement (the 'Lease') with 2100 Partners, L.P. for a space of approximately 9,000 square feet located at 2120 McKinney Avenue in Dallas, Texas (the 'Leased Premises'). The Lease was for a ten-year term and provided for two five-year renewal options. Sambuca avers that '[s]hortly after entering the Lease, 2100 Partners, L.P. sold the Leased Premises to MetLife, who assumed the 'Landlord' obligations under the Lease. Sambuca explains that MetLife contracted with CBRE to serve as property manager of the Leased Premises." *Id.* (citations and internal quotation marks omitted).

Plaintiff "asserts that MetLife has refused to remedy the flawed and shifting structure in spite of its obligations under the Lease. Sambuca further maintains that both Defendants actively hid information from Sambuca and made repeated representations and assurances that the structural issues would be addressed, knowing that Sambuca would rely on these representations. Additionally, Sambuca alleges that it has been the target of a concerted and wrongful attempt by Defendants to drive it out of the Leased Premises through purposeful delay and deception." *Id.* at 4-5 (citations and internal quotation marks omitted). "Accordingly, Sambuca asserts the following causes of action against Defendants: (1) breach of contract; (2) repudiation or anticipatory breach of contract; (3) breach of the warranty of quiet enjoyment; (4) fraud; (5) negligent misrepresentation; (6) civil conspiracy; and (7) aiding and abetting. Additionally, Sambuca demands: (1) specific performance; (2) declaratory judgment; and (3) rescission of the Lease renewal. Sambuca specifies that

it seeks compensatory and exemplary damages, as well as attorneys' fees, costs, and interest. " *Id.* at 5 (citations omitted).

Plaintiff has also explained that, on December 8, 2015, it discovered that the ownership of the Leased Premises (together with the neighboring office tower) had changed and that MetLife no longer owned the property, when MetLife sold and transferred its interest in the Leased Premises to MCPP. Plaintiff has since, with the Court's leave, filed a Fourth Amended Complaint to add MCPP as a defendant. *See* Dkt. Nos. 117, 119, & 120.

On April 6, 2016, Sambuca was served with Notice of Rule 45 Subpoenas (the "Subpoenas") that require Sambuca's attorneys, Mr. Addison Wilson, III and Mr. Wesley Bailey, to appear and give their depositions on April 15, 2016 and April 14, 2016, respectively. The Subpoenas also request from each attorney five general categories of documents.

The Court has stayed compliance with the Subpoenas pending resolution of the MPO. *See* Dkt. No. 135.

Plaintiff asserts that Defendants' attempt to depose its attorneys is improper gamesmanship and that taking the depositions of Mr. Wilson and Mr. Bailey would clearly open the door to Defendants' counsel Joel Reese's deposition. According to Plaintiff, Mr. Reese's involvement in the facts made the basis of Sambuca's causes of action is actually far more pertinent than that of Mr. Wilson or Mr. Bailey, and Plaintiff notes that it has not designated Mr. Wilson or Mr. Bailey as individuals likely to have discoverable information and has no intention of calling either Mr. Wilson or

Mr. Bailey as fact witnesses in this case. But, Plaintiffs contend, regardless, Defendants have taken the inconsistent position that under no circumstances would they produce Mr. Reese for deposition, making clear their deposition demand on Sambuca's attorneys was nothing more than gamesmanship.

Plaintiffs explain that Defendants indicated that Defendants' planned depositions of Mr. Wilson and Mr. Bailey was purportedly necessary to discover facts relating to the intent and reliance elements of Sambuca's fraud cause of action but provided no information to justify pursuing such discovery by way of depositions of these attorneys. Plaintiff argues that it is not Sambuca's lawyers' intent or reliance that is at issue in this case but, rather, is Sambuca's intent and reliance that is relevant, and, according to Plaintiff, Defendants have had and continue to have ample opportunity to discover this information from numerous representatives of Sambuca, such that Defendants' request for depositions of Sambuca's attorneys is blatantly duplicative of Defendants' other discovery in this case, not to mention the clearly privileged nature of the testimony sought.

Plaintiff contends that depositions of a party's legal counsel are highly disfavored by courts and that Defendants have not and cannot carry the heavy burden necessary to justify the depositions of Mr. Wilson and Mr. Bailey. Plaintiff further asserts that, in addition to Defendants' inability to meet the substantial burden required, the requested depositions would impose an undue burden on Sambuca and its attorneys, Mr. Wilson and Mr. Bailey.

Plaintiff asks that its MPO be granted, that the Subpoenas for the depositions of Mr. Wilson and Mr. Bailey be quashed, and that Defendants be prohibited from deposing Mr. Addison Wilson, III and Mr. Wesley Bailey but that, in the event that the Court determines Mr. Wilson and Mr. Bailey should be obliged to respond, the Court allow adequate time for compliance with the Subpoenas and permit the deposition of Defendants' counsel, Mr. Joel Reese, regarding the same topics and that, if the oral depositions of Mr. Wilson and Mr. Bailey are permitted, those questions be submitted to the witnesses in the form of depositions on written questions and the scope of those written question be limited with counsel precluded from asking any questions about attorney work product or attorney-client communications. Plaintiff also seeks an award of its costs and attorneys' fees incurred in bringing its MPO.

Defendants respond that the mere fact that an individual, employed by a party, has a license to practice law does not insulate him from discovery or create a massive hurdle that must be overcome and that, ignoring this principle, Plaintiff asks this Court to quash subpoenas served on attorneys that have no involvement in preparing this case for trial. Defendants contend that Plaintiff's MPO is based on the so-called *Shelton* test but assert that *Shelton* was not intended to provide heightened protection to all attorneys but rather only to trial attorneys.

Defendants argue that the attorneys whom Defendants seek to depose (Mr. Wilson and Mr. Bailey) are not trial lawyers but rather provide corporate transactional and real estate advice to Sambuca and participated in the negotiation and drafting of the Lease and its Amendments and sent numerous letters relating to alleged defects

at the premises. Defendants explains that the terms of the Lease and its Amendments and the alleged defects at the premises are the critical issues in this case and that Sambuca nevertheless seeks to insulate the architects of these documents from discovery. More specifically, Defendants contend that the following background facts demonstrate that Mr. Wilson and Mr. Bailey are critical witnesses in this case:

> This case arises out of a long-running dispute between Sambuca and Metropolitan Life Insurance Company ("MetLife") over the scope of MetLife's repair obligations under the Lease. During the course of this lengthy dispute, Sambuca was represented first by corporate attorney Addison Wilson III and later by corporate attorney Wesley Bailey. Mr. Wilson participated in the drafting and negotiation of the Lease, the First Amendment to the Lease, and the Second Amendment to Lease Agreement (including a Settlement Agreement and Mutual Release). Mr. Bailey participated in the drafting and negotiation of the Third Amendment to the Lease. In addition, both Mr. Wilson and Mr. Bailey sent numerous letters claiming that MetLife had breached the Lease by failing to repair the structural system of the building. At the same time its corporate lawyers, Mr. Wilson and Mr. Bailey, were sending letters alleging that MetLife failed to abide by the Lease, Sambuca asserts that it was defrauded into believing that MetLife would repair the restaurant building to Sambuca's satisfaction. Defendants believe that the letters from Mr. Wilson and Mr. Bailey undermine Sambuca's claims. Correspondence from Mr. Bailey undercuts the reliance element of Sambuca's fraud claim, while documents prepared by Mr. Wilson suggest that Sambuca has waived some of its claims in the lawsuit.

Dkt. No. 137 at 4 (footnotes omitted). Defendants explains that neither Mr. Wilson nor Mr. Bailey has made an appearance in this case, attended any deposition taken in this case, or corresponded with Defendants' counsel on matters relating to the litigation and that there is no indication that either Mr. Wilson or Mr. Bailey has been involved in trial preparation at all.

Defendants request that the Court deny Sambuca's MPO for three reasons. First, Sambuca has failed its burden to establish that the *Shelton* test applies because Sambuca has made no showing that Mr. Wilson and Mr. Bailey are involved in trial preparation. Second, even if the *Shelton* test applies, Defendants should be permitted to depose Mr. Wilson and Mr. Bailey because the information sought is non-privileged, critical to the defense of this case, and not available from any other source. Third, Sambuca has failed to show that the Subpoenas impose an undue burden.

Defendants ask the Court to deny Plaintiff's MPO, reject Plaintiff's requested relief, and order Mr. Wilson and Mr. Bailey to appear for depositions and produce responsive documents in compliance with the Subpoenas.

Through his Joinder, Mr. Bailey joins the MPO and asserts that he provided legal counsel and advice to Sambuca after the date (in November 2009) that Sambuca anticipated litigation, that his involvement in the subject matter of this case was and is for the sole purpose of rendering legal counsel and advice to Sambuca, that he was retained by Sambuca in 2012 and provides legal counsel and advice to Sambuca on a variety of matters, including in this lawsuit, that he has been extensively involved in the prosecution of the lawsuit as outside legal counsel to Sambuca from the commencement of this lawsuit and continues to work with Sambuca's lead trial counsel, Strasburger & Price, LLP, in preparing this lawsuit for trial, and that his involvement in this lawsuit includes, among other things, reviewing and revising the pleadings filed in this lawsuit, performing legal research and providing analysis regarding Sambuca's causes of action and the arguments asserted by Defendants in

this lawsuit, reviewing and drafting interrogatories and requests for production served in this lawsuit, reviewing documents produced by the Defendants and third parties in this lawsuit, discussing this lawsuit with expert witnesses and reviewing expert reports submitted on behalf of Sambuca and Defendants, and developing litigation strategy along with lead trial counsel. Mr. Bailey further contends that Defendants and their lead trial counsel are acutely aware of Mr. Bailey's involvement in this lawsuit, including the fact that he recently attended a lengthy mediation of this lawsuit which included a joint session with Defendants and their counsel and that he is routinely included in correspondence with Defendants' counsel regarding discovery and other matters pertaining to this lawsuit, including correspondence sent by Defendants' lead trial counsel.

Mr. Bailey contends that, in the Fifth Circuit, courts have found that the critical factor in determining whether a deposition of an attorney should be quashed is not the status of the lawyer as "trial counsel" but the extent of the lawyer's involvement in the pending litigation. Mr. Bailey argues that Defendants have not and cannot meet their burden to permit the deposition of Sambuca's attorney – that is, of showing that (1) no other means exist to obtain the information than to depose the opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.

Finally, Mr. Bailey asserts that the subpoena served on him constitutes an undue burden on – and harassment of – him, where he has a fiduciary obligation not to disclose any information that is protected by the attorney-client, has an interest in

ensuring that he honors his fiduciary responsibilities and does not disclose any privileged information, and, if deposed, would be required to engage separate legal counsel to represent his interest at the deposition and, even if his counsel is able to object to the questions to preserve the privilege, and Mr. Bailey is instructed not to answer, will still be required to sit through hours of inappropriate questions and resulting objections and instructions while incurring the substantial expense of being unable to service the clients of his law practice and having to pay for attorneys' fees for the attorney representing his interest at the deposition.

Mr. Bailey asks that the Court grant the MPO and prohibit Defendants from deposing Mr. Bailey and, in the event that the Court determines Mr. Bailey should be obliged to respond, allow adequate time for compliance with the subpoena and, if the oral deposition of Mr. Bailey is permitted, order that those questions be submitted to Mr. Bailey in the form of a deposition on written questions and the scope of those written question be limited with counsel precluded from asking any questions about attorney work product or attorney-client communications. Mr. Bailey also seeks an award of his costs and attorneys' fees incurred in bringing the Joinder.

Plaintiff replied in support of their MPO that Defendants' argument that the *Shelton* test does not apply to the depositions of Mr. Wilson and Mr. Bailey is based on semantics, not substance – that Sambuca did not use the phrase "trial preparation" to describe Mr. Wilson's and Mr. Bailey's involvement. Plaintiff assert that Defendants have provided no evidence that Mr. Wilson or Mr. Bailey acted as mere business advisors to Sambuca and that, properly applying the *Shelton* test to the present case,

Defendants plainly fail to meet their burden to show that (1) no other means exist to obtain the information than to depose Sambuca's counsel, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of Defendants' case.

Plaintiff finally asserts that the Court is expressly authorized to quash cumulative discovery that impinges on privileged matters and otherwise imposes an unnecessary burden and that, even if *Shelton* is not applied, Sambuca has established that there is good cause to protect Sambuca's counsel from the noticed depositions and Subpoenas because the scope of the depositions are unlimited and the document requests duplicate those previously served on Sambuca.

Defendants responded to Mr. Bailey's Joinder that Sambuca has taken the position in another motion that an attorney's intent and understanding with respect to the fraudulent misrepresentations at issue in this case is discoverable and cannot be withheld under the cloak of conclusory privilege assertions and yet here attempts to shield its own counsel from a deposition on that very topic under the cloak of conclusory privilege assertions. Defendants contend that the Court should reject Mr. Bailey's untimely Joinder because he seeks to use his law license as a shield to prevent Defendants from discovering relevant, non-privileged information and yet, according to Defendant, Mr. Bailey – a corporate advisor and not a trial attorney – cannot avoid a deposition merely because he has a law license.

Defendants explain that, as to Mr. Bailey, they attempted to compromise on this issue by agreeing to withdraw the subpoena to Mr. Bailey if Sambuca would agree (1)

to withdraw its opposition to the deposition of Mr. Wilson; (2) that Mr. Bailey's documents and communications are authentic under the Federal Rules of Evidence; and (3) not to call Mr. Bailey at trial but that Sambuca refused to agree and, without assurances as to the authenticity of Mr. Bailey's documents or Mr. Bailey's status as a possible trial witness, Defendants were forced to move forward with their request to depose Mr. Bailey.

Defendants argue that the mere fact that an individual, employed by a party, has a license to practice law does not insulate him from discovery or create a massive hurdle that must be overcome; that Mr. Bailey ignores this rule and contends that, as a lawyer, he can only be deposed if Defendants make the heightened showing outlined in *Shelton*; that, as an initial matter, the United States Court of Appeals for the Fifth Circuit has never expressly accepted the *Shelton* test, and if *Shelton* is not the law in the Fifth Circuit, Defendants are entitled to depose any person without leave of court under Federal Rule of Civil Procedure 30(a)(1); and that, even if *Shelton* is good law in the Fifth Circuit, Mr. Bailey, as Sambuca's corporate lawyer, is not subject to its protections. Defendants contend that neither Sambuca's MPO nor the attached conclusory Affidavit of Kim Forsythe provided any evidence that Mr. Bailey has been involved in trial preparation, but Mr. Bailey sought to remedy this deficiency after Defendants pointed it out in their response with his Joinder, which is untimely because it was filed 14 days after the date set in the subpoena for his deposition.

But Defendants assert that, even if *Shelton* applies to Mr. Bailey, Defendants have made the required showing to depose Mr. Bailey, where (1) there is no other

means to obtain the information Defendants seek from Mr. Bailey; (2) the information Defendants seek from Mr. Bailey is relevant and non-privileged; and (3) Mr. Bailey's deposition is crucial to Defendants' case.

Finally, Defendants urge the Court to reject Mr. Bailey's argument that the subpoena imposes an undue burden on him because it might require him to engage legal counsel and would require him to miss a day of work because his failure to submit any evidence of undue burden is fatal to his argument and neither of the slight inconveniences Mr. Bailey identifies rises to the level of an undue burden that requires quashing a subpoena.

Defendants request that the Court deny Mr. Bailey's Joinder, order Mr. Bailey to appear for a deposition, order Mr. Bailey to produce any responsive documents, and award Defendants their costs and attorneys' fees incurred in responding to Mr. Bailey's Joinder.

## Legal Standards

Pursuant to Federal Rule of Civil Procedure 45, a party may serve a subpoena commanding a nonparty "to whom it is directed to ... attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." FED. R. CIV. P. 45(a)(1)(A)(iii). Federal Rule of Civil Procedure 45(d)(1) provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction –

which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." FED. R. CIV. P. 45(d)(1).

Under Federal Rule of Civil Procedure 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). The moving party has the burden of proof. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Williams*, 178 F.R.D. at 109. "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

Where a subpoenaed non-party asserts undue burden, that party "has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive.'" *Wiwa*, 392 F.3d at 818 (quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)) (internal quotation marks omitted). The non-party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See S.E.C. v. Brady*, 238 F.R.D. 429, 437-38 (N.D. Tex. 2006); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005). "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (internal quotation marks and footnote omitted). "To

-14-

determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* (footnote omitted).

"When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Williams*, 178 F.R.D. at 110. Rule 26(b)(1) has been amended, effective December 1, 2015, to provide that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Under Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "[T]he burden is upon

[the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). And a party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of his objection to a request, and, if he does not, he waives the objection. *See Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004). A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

-16-

Federal Rules of Civil Procedure Rules 26(b) and 26(c) have been amended, effective December 1, 2015. As amended, Rule 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending. The Court finds that applying the standards of Rule 26, as amended, to Plaintiffs' MPO is both just and practicable.

Further, for the reasons the Court has recently explained, the Court concludes that the amendments to Rule 26 do not alter the burdens discussed above. *See Celanese Corp. v. Clariant Corp.*, No. 3:14-cv-4165-M, 2016 WL 1074573, at *3 (N.D. Tex. Mar.

18, 2016); *Longoria v. Cty. of Dallas*, No. 3:14-cv-3111-L, 2016 WL 728559, at *3 (N.D. Tex. Feb. 24, 2016).

Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking discovery, to prevail on a motion to compel or resist a motion for protective order, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action,

the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing. And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is subject to Rule 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller v. City of Dallas*, 303 F.R.D. 466, 475-77, 493-95 (N.D. Tex. 2014).

But the amendments to Rule 26(b) and Rule 26(c)(1) do not alter the basic allocation of the burden on the party resisting discovery to – in order to prevail on a motion for protective order or successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request would impose an undue burden

or expense or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

The Court also "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (footnote omitted). Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests "seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date"; "[t]he requests are not particularized"; and "[t]he period covered by the requests is unlimited." *In re O'Hare*, Misc. A. No. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012); *accord Turnbow v. Life Ptrs., Inc.*, No. 3:11-cv-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013).

A party, although not in possession or control of the materials sought in a subpoena and not the person to whom the subpoena is directed, has standing to file a motion to quash or modify under Federal Rule of Civil Procedure 45(d)(3) if he has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Ass'n of Am. Physicians & Surgs., Inc. v. Tex. Med. Bd.*, No. 5:07CV191, 2008 WL 2944671, at *1 (E.D. Tex. July 25, 2008). The Court finds that Plaintiff has a sufficient interest in its attorneys' testimony and document production under the Subpoenas to have standing to file its MPO.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct,

or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A). Rule 37(a)(5)(B)-(C) further provide in pertinent part that, "[i]f the motion is denied, the court ... must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

And Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26(c) for a protective order, Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

## Analysis

I.   <u>Depositions of Mr. Wilson and Mr. Bailey</u>

The United States Court of Appeals for the Fifth Circuit has observed that, "[g]enerally, federal courts have disfavored the practice of taking the deposition of a

party's attorney; instead, the practice should be employed only in limited circumstances." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999).

A few months after issuing its decision in *Theriot*, the Fifth Circuit further addressed the issue in *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999), explaining that, "[b]ecause depositions of opposing counsel are disfavored generally and should be permitted in only limited circumstances, one would suspect that a request to depose opposing counsel generally would provide a district court with good cause to issue a protective order." 197 F.3d at 209 (footnotes omitted). The Court of Appeals noted the analysis adopted by the United States Court of Appeals for the Eighth Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), forbidding a party from deposing opposing counsel unless (1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. *See id.* at 208. But the Fifth Circuit in *Nguyen* held only that, in that case, the district court "did not abuse its discretion in authorizing the depositions of defense counsel, even assuming the applicability of the *Shelton* inquiry." *Id.* at 209 (footnote omitted); *cf. Murphy v. Adelphia Recovery Trust*, No. 3:09-mc-105-B, 2009 WL 4755368, at *2 (N.D. Tex. Nov. 3, 2009) ("While the Fifth Circuit has not explicitly adopted *Shelton*, it has indicated that the same three factors inform a district court's discretion in determining whether to authorize the deposition of opposing counsel." (citing *Nguyen*, 197 F.3d at 209)).

Following these decisions, district court decisions in this circuit have noted that

"[t]he Federal Rules of Civil Procedure do not specifically prohibit the taking of an opposing counsel's deposition in a case," *Nat'l W. Life Ins. Co. v. W. Nat. Life Ins. Co.*, No. A-09-CA-711 LY, 2010 WL 5174366, at *2 (W.D. Tex. Dec. 13, 2010), and that "[t]he Federal Rules of Civil Procedure as well as Fifth Circuit precedent do not expressly prohibit the taking of in-house counsel depositions" and, "[a]lthough several districts within the Fifth Circuit caution about the taking of in-house counsel and/or opposing counsel depositions, there is not an express prohibition thereon," *Premier Dealer Servs., Inc. v. Duhon*, No. Civ. A. 12-1498, 2013 WL 5720354, at *4 (E.D. La. Oct. 21, 2013); *see also Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, No. Civ. A. 12-257-JJB-RLB, 2014 WL 199626, at *1-*2 (M.D. La. Jan. 15, 2014) ("Rule 30 of the Federal Rules of Civil Procedure allows for discovery depositions to be taken of 'any person.' Fed. R. Civ. P. 30(a)(1). The Rule itself does not preclude depositions of attorneys. The federal courts, however, disfavor depositions of a party's attorney and allow them only in limited circumstances. In addition, a deponent need not answer a question in a deposition when necessary to 'preserve a privilege.' Fed. R. Civ. P. 30(c)(2)." (citation omitted)).

District courts in the Fifth Circuit, following *Nguyen*, have applied the three-prong test established by the Eighth Circuit in *Shelton* to determine circumstances when in-house counsel or other opposing counsel should be subject to being deposed, but "several courts within the Fifth Circuit have found that when an attorney's role in a case is more akin to a 'mere business advisor,' for a company in an action, he does not constitute 'opposing counsel,' and therefore *Shelton* factors do not

warrant an application." *Id.*; *see also Hall v. La.*, No. Civ. A. 12-657-BAJ-RLB, 2014 WL 1652791, at *4-*5 (M.D. La. Apr. 23, 2014) (applying *Shelton* test). And district court decisions in this circuit, following *Shelton* and its progeny, have concluded that "[t]he critical factor in determining whether the Shelton test applies is not the status of the lawyer as 'trial counsel,' but the extent of the lawyer's involvement in the pending litigation" and that, "[i]f the lawyer has knowledge of relevant facts related to the subject matter of the litigation, and is merely advising the client with respect to the lawsuit, *Shelton* does not apply," but that, "if the lawyer is actively involved in trial preparation, she cannot be deposed unless the *Shelton* criteria are met." *Murphy*, 2009 WL 4755368, at *3.

Plaintiff has not met its burden to submit evidence showing that, even assuming the *Shelton* test applies in this circuit, Mr. Wilson is actively involved in trial preparation. The Affidavit of Kim Forsythe attests only that Mr. Wilson is an attorney who represents Sambuca and that "[a]ll involvement of Mr. Wilson and Mr. Bailey in the subject matter of the above-captioned case was and/or is for the purposes of rendering legal counsel and advice and is privileged"; Mr. Wilson "provided legal counsel and advice to Sambuca after the date Sambuca anticipated litigation" and "has been involved in providing legal counsel and advice to Sambuca since before the commercial lease that is at issue in this case" and "continued providing legal counsel and advice to Sambuca, both about the subject matter of this dispute and other unrelated matters, during the lease term and continuing after the date that Sambuca anticipated litigation." Dkt. No. 132-1 at 22. That does not qualify him for special

protection under the *Shelton* test. *See, e.g.*, *Murphy*, 2009 WL 4755368, at *3. And Plaintiff has not otherwise established good cause to quash the subpoena for, or issue a protective order as to, Mr. Wilson's deposition.

Defendants are also correct that Plaintiff's assertion that the subpoena is unduly burdensome for Mr. Wilson is not supported by any affidavits or other evidence. And the burden that it does assert – Plaintiff's being required to pay attorneys' fees in connection with Mr. Wilson's deposition – is not an undue burden under the circumstances.

The Court DENIES Plaintiff's MPO as to the subpoena seeking Mr. Wilson's deposition.

Through the late-filed Joinder, which under the circumstances (including where Defendants were afforded an opportunity to respond and make the last written filing), the Court will accept and consider, there is evidence of Mr. Bailey's involvement in this lawsuit. Assuming, then, that the *Shelton* test applies in this circuit and properly applies to Plaintiff's and Mr. Bailey's challenges to the subpoena seeking Mr. Bailey's deposition, the Court finds that Defendants have made the required showing under the *Shelton* test and that, correspondingly, Plaintiff and Mr. Bailey have failed to establish good cause to quash the subpoena for, or issue a protective order as to, Mr. Bailey's deposition.

Plaintiff's counsel agreed at oral argument to stipulate to the authenticity of documents in Mr. Bailey's possession, which Defendants' counsel agreed would eliminate the need for some of the deposition questioning of Mr. Bailey. But the

exchange at oral argument and in the briefing makes clear that there are no other means than Mr. Bailey's deposition to obtain certain information sought by Defendant that is relevant and not privileged and crucial to Defendants' preparation of the case. Specifically, Plaintiff's own complaint interjects communications in which Mr. Bailey was involved as the basis for some of Plaintiff's claims. Even where Defendants' counsel was also a party to any such communication, there is no substitute for Mr. Bailey's testimony as to his recollection of the content and circumstances surrounding a communication. That Mr. Bailey is Sambuca's attorney does not change that and – while reserving judgment on any claim of privilege as to Mr. Bailey's (or Mr. Wilson's) understanding of a communication or statement – does not make testimony of purely factual information by Mr. Bailey subject to work-product protection or attorney-client privilege.

For essentially the same reasons explained above as to Mr. Wilson, the Court finds that Plaintiff and Mr. Bailey have not met their burdens to show that his deposition presents an undue burden on Plaintiff or Mr. Bailey. The fact that Mr. Bailey is Sambuca's lawyer and will be taken away from his work and may feel the need to retain counsel to represent him at his deposition – circumstances that may, to a lesser or greater extent, apply to any third-party witness subpoenaed to testify by deposition – does not present an undue burden under the circumstances. Neither, for the same reasons explained above, does Plaintiff's being required to pay attorneys' fees in connection with Mr. Bailey's deposition.

The Court DENIES Plaintiff's MPO and Mr. Bailey's Joinder as to the subpoena seeking Mr. Bailey's deposition.

Defendants report that they have agreed to limit their inquiry to non-privileged matters, but the Court's ruling on the MPO and Joinder does not, of course, preclude Plaintiff or Mr. Bailey or Mr. Wilson from properly raising, under Federal Rule of Civil Procedure 30(c), a privilege or work-product objection to a particular question or questions at deposition.

The Court will not accept Plaintiff's invitation, and does not find that Plaintiff or Mr. Bailey have shown good cause, to require that Mr. Bailey's and Mr. Wilson's depositions be taken only on written questions. *See Heller*, 303 F.R.D. at 493 (explaining that, "as a general matter, under Rule 26, a party may seek discovery through any permitted method in any sequence"). Further, at oral argument, Plaintiff's counsel raised the fact that Mr. Bailey had not been formally served with the subpoena, but Mr. Bailey agreed to accept service so long as he was provided with the required witness fee.

Defendants offered in their response and at oral argument to take Mr. Bailey's deposition at the courthouse to ensure that the Court is available to address any privilege concerns that may arise. The Court believes that suggestion is well taken and will order Plaintiff's and Defendants' counsel to contact Shakira Todd at (214) 753-2165 to advise of all available dates before June 4, 2016 on which counsel for Plaintiff and for Defendants and Mr. Bailey and Mr. Wilson would each be available for their depositions. *See* Dkt. No. 157 ("ELECTRONIC ORDER granting 154 Joint Motion to

-27-

Extend Deposition Discovery Deadline. Deposition discovery deadline now 6/3/16. This applies only to depositions to which formal notice was served on or before 4/29/16."). Subject to the Court's availability, Mr. Bailey's and Mr. Wilson's depositions will be separately ordered to take place in the undersigned's conference room on a particular date and time.

Further, as the Court explained at oral argument, Plaintiff's request for an order permitting the deposition of Defendants' counsel, Mr. Joel Reese, regarding the same topics is not properly presented through a motion for protective order or motion to quash a subpoenaed deposition of Mr. Bailey or Mr. Wilson.

## II.   Document Requests

As for the document requests in the Subpoenas, Plaintiff asserts that all relevant and non-privileged documents and communications made by or to Mr. Wilson and Mr. Bailey in conjunction with their representation of Sambuca are in the possession, custody or control of Sambuca and have already been produced in this matter. Plaintiff asserts that it has established that there is good cause to protect Sambuca's counsel from the Subpoenas because the document requests duplicate those previously served on Sambuca.

Mr. Bailey's Joinder does not separately address the document requests.

Defendants respond that Sambuca does not separately challenge the document requests in the subpoenas, except to state in a footnote that Sambuca has produced all relevant and non-privileged documents that the subpoena seeks. Defendants explain that they do not seek documents from Mr. Wilson and Mr. Bailey that are exact

duplicates of documents that Sambuca has already produced but that, if Mr. Wilson and Mr. Bailey have a file that contains non-privileged documents that are not in Sambuca's possession (such as communications with third parties about issues related to the Lease or the Premises), those documents should be produced. Defendants further note that neither the subpoenaed attorneys nor Sambuca have objected to the document requests or provided any reason for protection from the narrow requests seeking relevant and non-privileged documents.

At oral argument, Plaintiff's counsel and Mr. Bailey represented to the Court that all non-privileged communication in Mr. Bailey's and Mr. Wilson's possession have been produced to Defendants, which representation Defendants' counsel accepted with the understanding than any responsive documents withheld as work product or privileged should have been included on a privilege log and that these productions are subject to Federal Rule of Civil Procedure 26(e)(1)'s supplementation requirement.

Accordingly, the parties agreed that this resolves the MPO and Joinder as to the document requests portion of the Subpoenas.

III.   <u>Requests for Award of Expenses</u>

Under Rules 26(c)(3), 37(a)(5), and 45(d)(1), the Court determines that, under all of the circumstances presented here, the parties and Mr. Bailey should bear their own expenses, including attorneys' fees, in connection with the MPO and the Joinder.

## Conclusion

For the reasons and to the extent explained at oral argument and above, the Court DENIES Plaintiff's Motion to Quash and for Protective Order Regarding

Defendants' Notice of Rule 45 Subpoenas Issued to Attorneys [Dkt. No. 131] and

DENIES Wesley J. Bailey's Joinder in Plaintiff's Motion to Quash And for Protective

Order Regarding Defendants' Notice of Rule 45 Subpoenas Issued to Attorneys [Dkt.

No. 141].

SO ORDERED.

DATED: May 6, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE