IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MCKINNEY/PEARL RESTAURANT PARTNERS, L.P., | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:14-cv-2498-B |
| METROPOLITAN LIFE INSURANCE COMPANY, CBRE, INC., and MCPP 2100 MCKINNEY, LLC, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Defendants Metropolitan Life Insurance Company ("MetLife"), CBRE, Inc. ("CBRE"), and MCPP 2100 McKinney, LLC ("MCPP"; collectively, with MetLife and CBRE, "Defendants") have filed a Second Motion to Compel [Dkt. No. 143] ("Defendants' Second MTC"), seeking an order under Federal Rule of Civil Procedure 37(a) to require Plaintiff McKinney/Pearl Restaurant Partners, L.P. d/b/a Sambuca ("Plaintiff" or "Sambuca") to (1) produce documents improperly withheld as privileged; (2) produce documents relating to appraisals and valuations in response to certain document requests; and (3) provide complete answers to certain interrogatories.

United States District Judge Jane J. Boyle referred Defendants' Second MTC to the undersigned United States magistrate judge for determination. *See* Dkt. No. 145.

Plaintiff filed a response, *see* Dkt. No. 174, and Defendants filed a reply, *see* Dkt. No. 182.

Plaintiff also filed its Second Motion to Compel and to Enforce Compliance with the Court's Prior Order on First Motion to Compel [Dkt. No. 150] ("Plaintiff's Second MTC"), seeking an order under Federal Rules of Civil Procedure 37(a) and 37(b) requiring Defendants to produce documents improperly withheld as privileged and/or attorney work product and enforcing the Court's previous order on Plaintiff's first Motion to Compel, with which Plaintiffs assert that Defendants have failed and/or refused to comply.

Judge Boyle referred Plaintiff's Second MTC to the undersigned for determination. *See* Dkt. No. 152.

Defendants filed a response, *see* Dkt. No. 172, and Plaintiff filed a reply, *see* Dkt. No. 181.

The Court heard oral argument on these motions on May 23, 2016. *See* Dkt. No. 186.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Defendants' Second Motion to Compel [Dkt. No. 143] and GRANTS in part and DENIES in part Plaintiff's Second Motion to Compel and to Enforce Compliance with the Court's Prior Order on First Motion to Compel [Dkt. No. 150].[1]

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

**Background**

The Court has previously summarized the background and allegations in this case based on Plaintiff's Third Amended Complaint, which will be recounted only in part here. *See* Dkt. No. 25 at 2-6.

Plaintiff "brings this action against Defendants based on MetLife's alleged deliberate and ongoing failure to fulfill its obligations under a commercial lease agreement and Defendants' repeated misrepresentations in furtherance of their scheme to drive Sambuca out of the leased premises, resulting in repeated and continuing injury to Sambuca." *Id.* at 2 (internal quotation marks omitted). Plaintiff "is a Texas limited partnership operating a restaurant at 2120 McKinney Avenue in Dallas, Texas. On October 6, 2003, Sambuca entered into a lease agreement (the 'Lease') with 2100 Partners, L.P. for a space of approximately 9,000 square feet located at 2120 McKinney Avenue in Dallas, Texas (the 'Leased Premises'). The Lease was for a ten-year term and provided for two five-year renewal options. Sambuca avers that '[s]hortly after entering the Lease, 2100 Partners, L.P. sold the Leased Premises to MetLife, who assumed the 'Landlord' obligations under the Lease. Sambuca explains that MetLife contracted with CBRE to serve as property manager of the Leased Premises." *Id.* (citations and internal quotation marks omitted).

Plaintiff "asserts that MetLife has refused to remedy the flawed and shifting structure in spite of its obligations under the Lease. Sambuca further maintains that both Defendants actively hid information from Sambuca and made repeated representations and assurances that the structural issues would be addressed,

knowing that Sambuca would rely on these representations. Additionally, Sambuca alleges that it has been the target of a concerted and wrongful attempt by Defendants to drive it out of the Leased Premises through purposeful delay and deception." *Id.* at 4-5 (citations and internal quotation marks omitted). "Accordingly, Sambuca asserts the following causes of action against Defendants: (1) breach of contract; (2) repudiation or anticipatory breach of contract; (3) breach of the warranty of quiet enjoyment; (4) fraud; (5) negligent misrepresentation; (6) civil conspiracy; and (7) aiding and abetting. Additionally, Sambuca demands: (1) specific performance; (2) declaratory judgment; and (3) rescission of the Lease renewal. Sambuca specifies that it seeks compensatory and exemplary damages, as well as attorneys' fees, costs, and interest. " *Id.* at 5 (citations omitted).

Plaintiff has also explained that, on December 8, 2015, it discovered that the ownership of the Leased Premises (together with the neighboring office tower) had changed and that MetLife no longer owned the property, when MetLife sold and transferred its interest in the Leased Premises to MCPP. Plaintiff has since, with the Court's leave, filed a Fourth Amended Complaint to add MCPP as a defendant. *See* Dkt. Nos. 117, 119, & 120.

In support of their Second MTC, Defendants assert that, "[n]otwithstanding Sambuca's claim that Defendants have cost the restaurant millions of dollars, Sambuca refuses to produce documents relating to valuations and appraisals of the restaurant holding company and its affiliates" and "also refuses to answer basic interrogatories and seeks to shield discoverable communications between non-attorneys with an

untenable privilege claim." Dkt. No. 143 at 1. Defendants ask the Court to order Sambuca to produce the documents that it has improperly withheld as privileged, where Defendants assert that Sambuca has withheld almost 200 non-attorney documents and communications merely because they relate to the subject matter of the litigation; overrule Sambuca's objections to MetLife's First Requests for Production ("RFP") No. 15, Second RFP No. 6, and Fourth RFP Nos. 9 and 10 and order Sambuca to produce responsive documents; overrule Sambuca's objections to MetLife's First Interrogatories Nos. 12 and 15 and CBRE's First Interrogatories Nos. 1 and 3-8 and order Sambuca to fully answer each of the interrogatories; and order Sambuca to pay Defendants' costs and attorneys' fees incurred in bringing Defendants' Second MTC.

In response, Plaintiff reports that, "[i]n an effort to avoid further dispute, Sambuca has produced the valuation-related documents and is withdrawing some privilege assertions and producing those documents." Dkt. No. 174 at 1 (footnote omitted). Plaintiff otherwise responds that, "[a]s for the remaining disputed documents, the work-product doctrine protects these documents because they were created by Sambuca in anticipation of litigation"; that "Sambuca did not waive the attorney-client privilege by sharing communications with 'third parties' because those 'third parties' were client representatives within the scope of the attorney-client privilege"; and that "Sambuca's interrogatory responses and objections are sufficient and complete." *Id.* at 1-2.

In reply, Defendants report that, after reviewing the additional information that Plaintiff provided in support of its privilege claims, Defendants are withdrawing their

objections to Plaintiff's privilege claims as to certain documents. *See* Dkt. No. 182 at 1 n.2. Defendants otherwise reply that Sambuca has failed to establish that the documents still at issue were created in anticipation of litigation; that Sambuca improperly claims attorney-client privilege under the "common interest" doctrine for documents that it shared with third parties; and that Sambuca still refuses to provide complete answers to Defendants' interrogatories.

In its Second MTC, Plaintiff asserts that Defendants are improperly withholding hundreds of documents based on conclusory assertions of privilege and have failed and/or refused to comply with the Court's January 8, 2016 Memorandum Opinion and Order [Dkt. No. 100], granting in part and denying in part Plaintiff's first Motion to Compel [Dkt. No. 77]. Plaintiff explains that "Defendants have recently, near the very end of the discovery period, produced nearly twelve thousand pages of documents that the Court previously compelled, and did so only after Sambuca painstakingly provided Defendants with particular examples of categories of documents that were missing from Defendants' previous document productions." Dkt. No. 150 at 1. According to Plaintiff, "[t]his provides a striking illustration of the gross deficiencies in Defendants' document production generally, and in Defendants' efforts, or lack thereof, to comply with this Court's Order in particular," and Plaintiff therefore "further requests that the Court enter an Order requiring Defendants to immediately and fully comply with the Court's prior Order." *Id.* at 1-2.

Defendants respond that Plaintiff only filed its Second MTC in retaliation for Defendants' filing their Second MTC and that, in doing so, Plaintiff is challenging

nearly 800 documents on Defendants' privilege logs. Defendants report that, while they limited their Second MTC to documents claimed as work product despite the absence of any attorney listed as a recipient of the documents, Sambuca challenged every document on Defendants' privilege log, outside of a handful of emails that were sent to or received by Defendants' outside trial counsel. Defendants further contend that they "had already agreed to the only relief Sambuca ever requested in conferring on privilege issues – namely, to supplement their privilege logs with additional details" – and that, "[h]ad Sambuca waited to see Defendants' supplemental privilege logs instead of filing a retaliatory Motion to Compel, Sambuca would have seen that virtually every document it challenges is a communication with Defendants' in-house or outside counsel providing legal advice relating to the subject matter of this litigation." Dkt. No. 172 at 1.

Defendant also respond that the Court should reject Plaintiff's request seeking a copy of Defendants' real estate management accounting system as well as an order for Defendants to produce some unspecified additional documents that Sambuca speculates may exist. According to Defendants, Sambuca never requested and is not entitled to Defendants' complete accounting system; Defendants have already produced responsive documents and electronically stored information ("ESI") from this system; and Sambuca is not entitled to an order compelling Defendants to conduct some unspecified additional document collection or production, where, contrary to Sambuca's accusations, Defendants have fully complied with the Court's prior order and produced all responsive documents.

Defendants ask the Court to deny Plaintiff's Second MTC and order Sambuca to pay Defendants' costs and attorneys' fees incurred in responding to Plaintiff's Second MTC.

Plaintiff replies that it did not raise its concerns with Defendants' privilege logs in retaliation, but, rather, Sambuca's counsel has repeatedly advised Defendants' counsel that their privilege logs with respect to in-house counsel and other internal communications was devoid of information sufficient to allow Sambuca to evaluate the privilege claims. According to Plaintiff, Defendants' declarations submitted in support of its privilege and work-product claims do not establish that the challenged documents are protected work product or attorney-client privileged communications, and Defendants cannot use in-house counsel to hide communications that would otherwise be discoverable. Plaintiff further contends that Defendants did not comply with this Court's January 8, 2016 Memorandum Opinion and Order [Dkt. No. 100], which compelled Defendants to produce certain responsive documents by January 29, 2016, and that "the fact that Defendants failed to even search for the nearly twelve thousand pages of documents responsive to both Sambuca's requests and this Court's Order shows that Defendants' position in the Response is tenuous at best." Dkt. No. 181 at 3.

## Legal Standards

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to

produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33. *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv).

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). In response to a Rule 34 request, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C). And, in response to an interrogatory under Rule 33, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath"; "[t]he grounds for objecting to an interrogatory must be stated with specificity"; and "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." FED. R. CIV. P. 33(b)(3)-(4).

A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary

proof of the time or expense involved in responding to the discovery request."). And the "party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

A party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of his objection to a request, and, if he does not, he waives the objection. *See Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 (D. Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

The Court has previously explained the standards governing the parties' claims of attorney-client privilege in this diversity case:

> This Court sitting in this diversity case applies the Texas attorney-client privilege. Under Texas law, the elements of the attorney-client privilege are: (1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived. The burden is on the party asserting the privilege to demonstrate how each document satisfies these elements. A general allegation of privilege is insufficient to meet this burden. Instead, the proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists. Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the privilege still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." In fact, "resort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible."

*Curlee v. United Parcel Serv., Inc. (Ohio)*, No. 3:13-cv-344-P, 2014 WL 4262036, at *4 (N.D. Tex. Aug. 29, 2014) (citations omitted).

The Texas Supreme Court has recognized that privileges "represent society's desire to protect certain relationships." *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 163 (Tex. 1983). "It is the rule in Texas that the protections afforded by a privilege are waived by voluntary disclosure of the privileged documents." *Jordan v. Court of Appeals for Fourth Supreme Judicial Dist.,* 701 S.W.2d 644, 649 (Tex. 1985). More specifically,

> [u]nder Texas law, the attorney-client privilege prohibits disclosure of confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. Tex. R. Evid. 503(b)(1). The privilege can be claimed by the client, or by the attorney on the client's behalf. TEX. R. EVID. 503(c). Generally, the voluntary disclosure of privileged communications to a third party results in a waiver of the privilege. TEX. R. EVID. 511. There is an exception to this rule, however, found in Tex. R. Evid. 503(b)(1)(C). This exception protects
>> confidential communications made for the purpose of facilitating the rendition of professional legal services ... by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein.
>
> TEX. R. EVID. 503(b)(1)(C).

*Klein v. Fed. Ins. Co.,* No. 7:03-cv-102-D, 2014 WL 3408355, at *8-*9 (N.D. Tex. July 14, 2014) (footnotes omitted). "Although it is sometimes referred to as the 'joint defense' privilege, *see In re XL Specialty Ins. Co.,* 373 S.W.3d 46, 50-51 (Tex. 2012), Tex. R. Evid. 503(b)(1)(C) does not create an independent privilege, but rather an exception to the general rule that no attorney-client privilege attaches to communications that are made in the presence of or disclosed to a third party." *Id.* at *8 n.19 (internal quotation marks omitted). In *In re XL Specialty Insurance Co.,* 373

-11-

S.W.3d 46 (Tex. 2012), the Texas Supreme Court made clear that Texas law on the so-called common-interest or joint-defense doctrine "requires that the communications be made in the context of a pending action," provides that "no commonality of interest exists absent actual litigation," and, accordingly, provides that the exception to the general rule under Texas law "is not a 'common interest' privilege that extends beyond litigation" and is not "a 'joint defense' privilege, as it applies not just to defendants but to any parties to a pending action." 373 S.W.3d at 51-52 (footnotes omitted). Rather, "Rule 503(b)(1)(C)'s privilege is more appropriately termed an 'allied litigant' privilege," "protects communications made between a client, or the client's lawyer, to another party's lawyer, not to the other party itself," and "applies only when the parties have separate counsel." *Id.* at 52-53.

Texas Rule of Evidence 503(d)(5) sets forth the joint-client exception to the attorney-client privilege. The rule states that "the privilege does not apply if the communication (1) is offered in an action between clients who retained or consulted the same lawyer; (2) was made by any of the clients to the lawyer; and (3) is relevant to a matter of common interest between the clients." TEX. R. EVID. 503(d)(5). "Thus, the rule contemplates that when a communication relevant to a common matter between two clients is requested in discovery, the attorney-client privilege remains intact as to each client unless the suit is between the joint clients." *In re Unitrin Cty. Mut. Ins. Co.*, No. 03-10-00384-CV, 2010 WL 2867326, at *3 (Tex. App. – Austin, July 22, 2010, orig. proceeding).

Likewise, the following standards govern the parties' assertions of work-product

-12-

protection over certain documents:

> [T]he issue of whether documents are exempt from discovery under the attorney work product doctrine is governed by federal law in diversity cases because work product is not a substantive privilege within the meaning of Federal Rule of Civil Procedure 501. The federal work product doctrine, as codified by Federal Rule of Civil Procedure 26(b)(3), provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection. But "the primary motivating purpose" behind the creation of the document must be to aid in possible future litigation. As the advisory committee notes to Rule 26(b)(3) make clear, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."
>
> Among the factors relevant to determining the primary motivation for creating a document are "'the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation.
>
> Like all privileges, the work product doctrine must be strictly construed. The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. A general allegation of work product protection is insufficient to meet this burden. Instead, "'a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection.'" The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product. Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the work product exemption still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." In fact, "'resort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible.'"

*Orchestrate HR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2014 WL 884742, at *2 (N.D.

Tex. Feb. 27, 2014) (citations omitted).

"If a party meets its burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials should still be produced." *Brady*, 238 F.R.D. at 443. Rule 26(b)(3) instructs the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." FED. R. CIV. P. 26(b)(3). A party may only obtain discovery of documents prepared in anticipation of litigation or for trial upon showing that the party seeking discovery has (1) substantial need of the materials to prepare for his or her case and (2) that the party cannot obtain the substantial equivalent of the materials by other means without undue hardship. *See id.* And the work-product rule accords "special protection to work-product revealing the attorney's mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). As such, "if the materials sought are opinion work-product then a court may compel discovery only if the party seeking the materials demonstrates a compelling need for the information." *Brady*, 238 F.R.D. at 443; *accord S.E.C. v. Cuban*, No. 3:08-cv-2050-D, 2012 WL 456532, at \*2 & n.3 (N.D. Tex. Feb. 10, 2012).

The work-product doctrine is very different from the attorney-client privilege with regard to possible waiver. Although the attorney-client privilege exists to protect the confidential communications between an attorney and client and, thus, is generally waived by disclosure of confidential communications to third parties, the work product protection exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v.*

*Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). "Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Id.* Such a disclosure only waives the work product privilege if it is given to adversaries or is "treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material." *Advance Technology Incubator, Inc. v. Sharp Corp.*, 2009 WL 4432569, at *2 (E.D. Tex. 2009) (citing *Ferko v. NASCAR*, 219 F.R.D. 396, 400-01 (E.D. Tex. 2003); *Brady*, 238 F.R.D. at 444)). And, "[u]nlike the attorney-client privilege, the burden of proving waiver of work product immunity falls on the party asserting waiver." *Brady*, 238 F.R.D. at 444.

Federal Rules of Civil Procedure Rules 26(b) and 26(c) have been amended, effective December 1, 2015. Rule 26(b)(1) now provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The amendments to Rules 26 and 34 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending. The Court finds that applying the standards of Rules 26 and 34, as amended,

to Defendants' Second MTC and Plaintiff's Second MTC is both just and practicable.

Further, for the reasons the Court has recently explained, the Court concludes that the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr v. State Farm Mutual Automobile Insurance Company*, 312 F.R.D. 459, 463-69 (N.D. Tex. 2015). Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality

calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking discovery, to prevail on a motion to compel, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is subject to Rule 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without

substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller v. City of Dallas*, 303 F.R.D. 466, 475-77, 493-95 (N.D. Tex. 2014).

But the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request would impose an undue burden or expense or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (I) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A).

Federal Rule of Civil Procedure 37(a)(5)(B)-(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the

motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

Federal Rule of Civil Procedure 37(b)(2)(A) provides that, "[i]f a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders," including, among other sanctions, directing that matters embraced in the order or other designated facts be taken as true, prohibiting the disobedient party from introducing designated matters in evidence, and/or staying further proceedings until the order is obeyed. FED. R. CIV. P. 37(b)(2)(A)(i)-(vi). Sanctions available under Rule 37(b) are appropriate where there is willful disobedience or gross indifference but not where failure to comply was outside the party's control. *See Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970). Rule 37(b)(2)(C) further requires that, "[i]nstead of or in addition to the orders [described under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

## Analysis

I.   <u>Defendants' Second MTC</u>

   A.   MetLife's Second Requests for Production ("RFP") No. 6; MetLife's First RFP No. 15; MetLife's Fourth RFP Nos. 9 & 10

In its response to Defendants' Second MTC, Plaintiff represents that it produced all the documents about which Defendants complain and thus withdraws its objections to these requests, and, at oral argument, Plaintiff's counsel assured the Court and Defendants' counsel that Plaintiff has produced all non-privileged documents responsive to MetLife's Second RFP No. 6; MetLife's First RFP No. 15; and MetLife's Fourth RFP Nos. 9 and 10 and is not withholding any documents based on any distinction between Sambuca and Restaurant Expert Management, Inc. ("REM, Inc."), an affiliated management company of Sambuca. Accordingly, the Court DENIES Defendants' Second MTC as moot as to these document requests, subject to Plaintiff's ongoing supplementation obligations under Federal Rule of Civil Procedure 26(e).

   B.   MetLife's First Set of Interrogatories No. 12

This interrogatory asks Plaintiff to identify the details of each false and deceptive representation or statement that Plaintiff alleges in its complaint. Plaintiff objects that it cannot answer more fully than it already has to the best of its ability because of the nature of the "string-along" fraud that Plaintiff alleges.

The Court determines that this is not an impermissible request to require Plaintiff to marshal its evidence for trial and overrules Plaintiff's objections to this interrogatory. At the end of discovery, in a case in which Plaintiff alleges that

Defendants made false and deceptive representations and statements, this is a reasonable request. To the extent that it has not already done so, Plaintiff must amend its answer to identify the requested details of any allegedly false and deceptive affirmative representation or statement on which Plaintiff will rely in support of its claims against Defendants. Any amended answer may rely in part on Federal Rule of Civil Procedure 33(d), as Plaintiff already has, so long as Plaintiff only points to specific documents, by name or bates number.

C.     MetLife's First Set of Interrogatories No. 15

Plaintiff's has objected on vagueness grounds and then answered Interrogatory No. 15 by pointing Defendants to documents produced and expert reports served in this case. In doing so, Plaintiff relies on Rule 33(d), which provides that, "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." FED. R. CIV. P. 33(d). Thus, in relying on Rule 33(d) in an interrogatory answer, Plaintiff must specify the information that Defendants should review in sufficient detail to enable Defendants to locate and identify the information in the documents as readily as Plaintiff could.

The Court determines that Plaintiff's pointing Defendants generally to document productions and expert reports does not properly invoke Rule 33(d). Plaintiff will be required to amend its answer to point to specific documents, by name or bates number, and to explain its reasonable understanding of what constitutes a "test, survey, or evaluation" as to which the interrogatory is asking. If tests, surveys, or evaluations are performed on a regular basis, Plaintiff's response should specify the time frame in which the testing or evaluations are performed – and by whom – with reasonable detail. Except as provided above, the Court overrules Plaintiff's objections to Interrogatory No. 15.

D.    CBRE's First Set of Interrogatories No. 1

Plaintiff's answer to Interrogatory No. 1 explains why Plaintiff may not have the information that the interrogatory asks for but does not straightforwardly state that Plaintiff does not possess the identifying information that Defendants seek. Plaintiff must amend its answer to provide any responsive information that it has or to clearly state that it has no responsive information. The Court overrules Plaintiff's objections to this interrogatory.

E.    CBRE's First Set of Interrogatories Nos. 3-7

For the reasons explained above as to MetLife's First Set of Interrogatories No. 15, the Court determines that Plaintiff's pointing Defendants generally to document productions and expert reports does not properly invoke Rule 33(d), and Plaintiff will be required to amend its answers to Interrogatory Nos. 3, 4, 5, 6, and 7 to point to specific documents, by name or bates number, that, in Plaintiff's view, form the basis

for Plaintiff's denial of the requests for admission at issue. The Court determines that these are not impermissible requests to require Plaintiff to marshal its evidence for trial and overrules Plaintiff's objections to these interrogatories.

F.      CBRE's First Set of Interrogatories No. 8

The Court overrules Plaintiff's objections to Interrogatory No. 8, which, under the circumstances of the case and in light of Plaintiff's claims, reasonably asks Plaintiff to identify "each notice [it provided] ... under the terms of the Lease." The Court determines that Plaintiff's pointing Defendants generally to document productions – including "voluminous produced communications between Sambuca and Defendants" – does not properly invoke Rule 33(d), and Plaintiff will be required to amend its answer to point to specific documents, by name or bates number, that, in Plaintiff's view, constitute a "notice by Sambuca provided to MetLife or CBRE under the terms of the Lease." This should at least include any such notice on which Plaintiff may rely in support of any claim or defense in this case.

G.      Challenges to Claims of Work Product

As an initial matter, the Court notes that it declines to find any claim by Plaintiff or Defendants of privilege or work-product protection waived based on allegedly insufficient privilege logs under Federal Rule of Civil Procedure 26(b)(5). Rather, the Court gave the parties the opportunity to fully support their claims of privilege and work product in response to the pending motions to compel and will assess the claims based on the parties' evidence filed in support of their responses.

Defendants challenge two categories of documents on Plaintiff's privilege log:

certain entries asserting work-product protection over documents that were not prepared by or for an attorney preparing for litigation (Category 1), and certain entries in which Plaintiff claims attorney-client privilege and work-product protection for documents that it shared with third parties (Category 2).

As to Category 1, the Court need not make a determination – in light of Plaintiff's withdrawing its claim of work-product protection or Defendants' withdrawing their challenge to that claim – as to Documents 7, 13, 19, 25, 27-28, 33-34, 40, 53-54, 60, 108, 124-128, 136, 141, 152-153, 157-160, and 162-164.

The Court has carefully reviewed the Affidavit of Kim Forsythe [Dkt. No. 175] as to the remaining privilege log entries in dispute and determines that, for many of the reasons discussed in Defendants' reply in support of their Second MTC, Plaintiff has failed to meet its burden to establish that the primary motivating purpose behind the creation of the following Category 1 documents was to aid in possible future or ongoing litigation or that the documents otherwise were prepared by Plaintiff's representative in anticipation of litigation as required for work-product protection: Documents 1, 3-6, 8-12, 14-18, 22-24, 26, 29-32 35-38, 41-52, 55-56, 58-59, 61-63, 65-96, 99, 104-107, 109-112, 114, 119-120, 122-123, 129-132, 134-135, 140, 142-151, 154-156, and 161. *See* Dkt. No. 144 at 5-9. Accordingly, the Court GRANTS Defendants' motion to compel production of these documents.

But the Court also determines that Plaintiff has met its burden to establish that the following Category 1 documents were prepared by its representative in anticipation of litigation and/or are otherwise privileged: Documents 2, 20-21, 39, 57, 64, 97-98, 100-

103, 113, 115-118, 121, 133, 137-139, and 165. *See id.* Accordingly, the Court DENIES Defendants' motion to compel production of these documents.

H.     Challenges to Claims of Attorney-Client Privilege

Defendants challenge Plaintiff's claim of attorney-client privilege as to 23 documents consisting of communications with Plaintiff's counsel on which Steve Lieberman was included. (Plaintiff has withdrawn its privilege objections as to, and will produce, Document 24 in Category 2.)

In response, Plaintiff explains that Mr. Lieberman is a minority owner of Sambuca; that Sambuca's discussions with Mr. Lieberman were in his capacity as an owner of Sambuca; that Mr. Lieberman is also CEO of The Retail Connection, and certain of The Retail Connection employees were included on some of the communications as indicated in the Affidavit of Kim Forsythe; and that, to the extent these employees were included on privileged communications, they were acting at the direction of Mr. Lieberman as agents in his capacity as minority owner of Sambuca. Plaintiff asserts that, in his capacity as owner, Mr. Lieberman is entitled to attorney-client privilege, and his agents are entitled to the same.

Plaintiff relies on Texas Rule of Evidence 503(b), which extends the attorney-client privilege to communications between the client's lawyer and the client's representative. Under Rule 503(b), "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client: (A) between the client or the client's representative and the client's lawyer or the lawyer's representative; (B)

between the client's lawyer and the lawyer's representative; (C) by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action or that lawyer's representative, if the communications concern a matter of common interest in the pending action; (D) between the client's representatives or between the client and the client's representative; or (E) among lawyers and their representatives representing the same client." TEX. R. EVID. 503(b)(1).

Texas Rule of Evidence 503(a)(2) defines a "representative of the client" as "(A) a person having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client, or (B) any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client." TEX. R. EVID. 503(a)(2). "Although the attorney-client privilege extends to communications between 'representatives of the client,' a party invoking the privilege must show that each person privy to the communication: (1) had the authority to obtain professional legal services on behalf of the client; (2) had authority to act on legal advice rendered to the client; or (3) made or received the confidential communication while acting within the scope of his employment for the purpose of effectuating legal representation to the client." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 475 (N.D. Tex. 2004).

The Court determines that, through the Affidavit of Kim Forsythe [Dkt. No. 175], Plaintiff has sufficiently established that Mr. Lieberman and his employees were making or receiving the confidential communications at issue with Plaintiff's counsel

while acting in the scope of employment with – or, in this case, minority ownership of – Plaintiff (or as agents of the minority owner) for the purpose of effectuating legal representation to Plaintiff. This conclusion is not undermined by Plaintiff also having retained The Retail Connection and Mr. Lieberman to negotiate on Plaintiff's behalf with Defendants. *See* Dkt. No. 144 at 213-214. Mr. Lieberman's serving as Plaintiff's agent in any negotiation does not preclude his making or receiving confidential communications while acting within the scope of his role as minority owner for the purpose of effectuating legal representation to Plaintiff, even in connection with the same negotiations.

Accordingly, Plaintiff need not (as it does not) attempt to rely on any common-interest or allied-litigant doctrine, and the Court determines that the attorney-client privilege as to Documents 1-23 in Category 2, *see* Dkt. No. 144 at 10, has not been waived. The Court therefore DENIES Defendants' motion to compel production of these documents.

## II.   Plaintiff's Second MTC

### A.   Compliance with Prior Order on Plaintiff's First Motion to Compel

After carefully considering the parties' briefing, evidence, and oral argument, the Court determines that Plaintiff has not demonstrated that Defendants are currently out of compliance with the Court's January 8, 2016 Memorandum Opinion and Order [Dkt. No. 100], granting in part and denying in part Plaintiff's first Motion to Compel [Dkt. No. 77]. Defendants have assured the Court that they have produced all responsive documents and ESI, including from MetLife's proprietary real estate

management accounting software, Management Records Incorporated ("MRI"). The Court determines that there is no basis for any order requiring additional production from the MRI system based on the Court's prior order on Plaintiff's first Motion to Compel. Accordingly, the Court DENIES Plaintiffs' Motion to Enforce Compliance with the Court's Prior Order on First Motion to Compel, subject to Defendants' ongoing supplementation obligations under Rule 26(e), including as to any document production required by the Court's January 8, 2016 Memorandum Opinion and Order [Dkt. No. 100].

B.      Challenges to Claims of Work Product and Attorney-Client Privilege

Plaintiff challenges dozens of documents as to which Defendants assert work-product protection because, Plaintiff alleges, they were not prepared by or for a party or that party's representative in anticipation of litigation or for trial. Plaintiff also challenges dozens of documents as to which Defendants assert attorney-client privilege because, Plaintiff alleges, they were not made for the purposes of facilitating the rendition of professional legal services.

In response, Defendants filed and rely on the Declaration of Frederique Beky; the Declaration of Kari Whitley Delamore; the Declaration of Richard L. Flaten, Jr.; the Declaration of Steven Karp; the Declaration of J. Kenneth Kopf; the Declaration of Melissa M. McNeel; the Declaration of Robin Nichol Norvell; and the Declaration of Melayne Packer. *See* Dkt. No. 173. Defendants also withdrew their privilege and/or work-product claims as to certain challenged documents. *See* Dkt. No. 172 at 5 n.7.

The Court determines that, insofar as documents involve communications

between MetLife's in-house attorneys and employees of CBRE, Defendants have established that any privilege or work-product protection is not waived because CBRE acts as MetLife's agent in managing the Sambuca building and because CBRE and MetLife qualify as joint clients.

The Court also determines, after carefully reviewing the briefing and Defendants' evidence, that Defendants have met their burden to establish that the challenged documents on their privilege logs, *see* Dkt. No. 151 at App. 1-41, are properly withheld based on work-product protection and/or the attorney-client privilege with the following exceptions as to which the Court determines that Defendants have not met their burden and which Defendants will be required to disclose: MetLife's Supplemental Privilege Log, Documents 13, 15, 24, 5412, 5630, 9656, 10244, 10519, 501172, 501173, 501335, 501842, 501872, 501883, 501887, 502924, 503013, 503082, 503084, 503085, 503468, 503469, 503470, 503471, 503473, 503474, 503476, 503489, 503490, 503492, 503493, 503497, 503503, 503507, 503510, 503600, 503601, 503841, 503849, 503859, 503875, 503886, 503894, 503896, 503900, 503903, 600889, 601721, 601908, 602183, 603472, 603988, 604108, 606172, 606261, 606338, 606339, 606340, 606913, 606914, 606916, 606917, 606920, 606921, 606922, 606956, 606957, 606967, 606971, 606973, 606974, 607126, 607127, 607203, 607498, 607503, 607513, 607531, 607542, 607747, 607789, 607793, 900031, 900035, 900040, and 900117 and CBRE's Supplemental Privilege Log, Documents 35, 36, 669, 673, 675, 706, 711, 729, 730, 734, 738, 1031, 1034, 1035, 1038, 1039, 1121, 1299, 1311, 1312, 1389, 1390, 1400, 1472, 1519, 1619, 1621, 1624, 1625, 1654, 1661, 1662, 1693, 1695, 1698, 1701, 1702, 1704,

1714, 1715, 1716, 1717, 1718, 1733, 1735, 3271, 5613, 6330, 6916, 6918, 6921, 6925, 6940, 6943, 6946, 7111, 9609, 9611, 16190, 16191, 100013, 100014, and 100015.

The Court therefore GRANTS Plaintiff's motion to compel production of the documents listed above and otherwise DENIES Plaintiff's Second MTC.

Plaintiff takes particular issue with documents that include or are authored by MetLife's Associate General Counsel Steven Karp, noting that communications with an in-house counsel are not automatically presumed privileged or protected and that it is particularly difficult to determine the primary purpose of communications involving in-house counsel, who often have responsibilities that extend beyond the mere rendering of legal advice and involve acting as a business adviser. The Court has taken account of the extent to which Defendants' evidence establishes the role Mr. Karp played in connection with a particular document in making the determinations reflected above.

III.   <u>Requests for Award of Expenses</u>

Under Federal Rules of Civil Procedure 37(a)(5) and 37(b), the Court determines that, under all of the circumstances presented here, Plaintiff and Defendants should bear their own expenses, including attorneys' fees, in connection with Defendants' Second MTC and Plaintiff's Second MTC.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Defendants' Second Motion to Compel [Dkt. No. 143] and GRANTS in part and DENIES in part Plaintiff's Second Motion to Compel and to

Enforce Compliance with the Court's Prior Order on First Motion to Compel [Dkt. No. 150].

All amended or supplemental interrogatory answers and document productions required by this order must be served on the opposing party's counsel by **June 3, 2016**.

SO ORDERED.

DATED: May 25, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE