IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MCKINNEY/PEARL RESTAURANT PARTNERS, L.P., | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:14-cv-2498-B |
| METROPOLITAN LIFE INSURANCE COMPANY, CBRE, INC., and MCPP 2100 MCKINNEY, LLC, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Defendants Metropolitan Life Insurance Company ("MetLife"), CBRE, Inc. ("CBRE"), and MCPP 2100 McKinney, LLC ("MCPP") (collectively, "Defendants") have filed a Motion to Quash Subpoena to Joel Reese [Dkt. No. 176] (the "Motion to Quash"), seeking an order under Federal Rules of Civil Procedure 26(c) and 45 to quash a subpoena for the deposition of Defendants' counsel issued by Plaintiff McKinney/Pearl Restaurant Partners, L.P. d/b/a Sambuca ("Plaintiff" or "Sambuca").

United States District Judge Jane J. Boyle referred the motion to the undersigned United States magistrate judge for determination. *See* Dkt. No. 179.

Plaintiff filed a response, *see* Dkt. No. 183, and Plaintiff filed a reply, *see* Dkt. No. 185.

The Court heard oral argument on the Motion to Quash on May 23, 2016. *See* Dkt. No. 186.

-1-

For the reasons explained below, the Court GRANTS Defendants' Motion to Quash Subpoena to Joel Reese [Dkt. No. 176].

## Background

The Court has previously summarized the background and allegations in this case based on Plaintiff's Third Amended Complaint, which will be recounted only in part here. *See* Dkt. No. 25 at 2-6.

Plaintiff "brings this action against Defendants based on MetLife's alleged deliberate and ongoing failure to fulfill its obligations under a commercial lease agreement and Defendants' repeated misrepresentations in furtherance of their scheme to drive Sambuca out of the leased premises, resulting in repeated and continuing injury to Sambuca." *Id.* at 2 (internal quotation marks omitted). Plaintiff "is a Texas limited partnership operating a restaurant at 2120 McKinney Avenue in Dallas, Texas. On October 6, 2003, Sambuca entered into a lease agreement (the 'Lease') with 2100 Partners, L.P. for a space of approximately 9,000 square feet located at 2120 McKinney Avenue in Dallas, Texas (the 'Leased Premises'). The Lease was for a ten-year term and provided for two five-year renewal options. Sambuca avers that '[s]hortly after entering the Lease, 2100 Partners, L.P. sold the Leased Premises to MetLife, who assumed the 'Landlord' obligations under the Lease. Sambuca explains that MetLife contracted with CBRE to serve as property manager of the Leased Premises." *Id.* (citations and internal quotation marks omitted).

Plaintiff "asserts that MetLife has refused to remedy the flawed and shifting structure in spite of its obligations under the Lease. Sambuca further maintains that

both Defendants actively hid information from Sambuca and made repeated representations and assurances that the structural issues would be addressed, knowing that Sambuca would rely on these representations. Additionally, Sambuca alleges that it has been the target of a concerted and wrongful attempt by Defendants to drive it out of the Leased Premises through purposeful delay and deception." *Id.* at 4-5 (citations and internal quotation marks omitted). "Accordingly, Sambuca asserts the following causes of action against Defendants: (1) breach of contract; (2) repudiation or anticipatory breach of contract; (3) breach of the warranty of quiet enjoyment; (4) fraud; (5) negligent misrepresentation; (6) civil conspiracy; and (7) aiding and abetting. Additionally, Sambuca demands: (1) specific performance; (2) declaratory judgment; and (3) rescission of the Lease renewal. Sambuca specifies that it seeks compensatory and exemplary damages, as well as attorneys' fees, costs, and interest. " *Id.* at 5 (citations omitted).

Plaintiff has also explained that, on December 8, 2015, it discovered that the ownership of the Leased Premises (together with the neighboring office tower) had changed and that MetLife no longer owned the property, when MetLife sold and transferred its interest in the Leased Premises to MCPP. Plaintiff has since, with the Court's leave, filed a Fourth Amended Complaint to add MCPP as a defendant. *See* Dkt. Nos. 117, 119, & 120.

On May 5, 2016, Sambuca's counsel served on Mr. Reese a subpoena (the "Subpoena") that requires Mr. Reese to appear and give his deposition on May 20, 2016 – the discovery deadline other than for "depositions to which formal notice was served

on or before 4/29/16." *See* Dkt No. 177 at 3-7; Dkt. No. 113; Dkt. No. 133; Dkt. No. 157. The Court stayed compliance with the Subpoena pending resolution of Defendants' Motion to Quash. *See* Dkt. No. 180.

Defendants assert that Sambuca's subpoena for the deposition of Defendants' lead trial counsel, Joel Reese, is an abuse of the discovery process, implemented in response "to Defendants' reasonable request to depose Sambuca's corporate attorneys." Dkt. No. 176 at 1. Defendants urge the Court to quash the Subpoena for two reasons: First, unlike Sambuca's corporate attorneys, Mr. Reese is a trial lawyer, serves as trial counsel for Defendants in this case, and will be Defendants' lead lawyer presenting this case to the jury, and therefore allowing Sambuca to turn Mr. Reese into a fact witness is prejudicial to Mr. Reese's clients. Second, Sambuca has not met the heightened standard by which a request to depose trial counsel is judged and, most notably, cannot show that it has exhausted all other options for discovering the information it seeks from Mr. Reese, where, for example, Sambuca could have requested information from Defendants via interrogatories and still has the opportunity to obtain the information it seeks from Defendants' corporate representatives or its own witnesses.

Plaintiff responds that Sambuca had no intention of deposing the attorneys in this case but the discovery tactics that Defendants have employed have opened the door to and necessitated the deposition of Defendants' counsel. Plaintiff contends that "Defendants argued – and the Court ultimately agreed – that Wesley Bailey was not shielded from giving a deposition in this matter even though he is Sambuca's counsel and is actively involved in this litigation" but that "Defendants now reverse course and

-4-

claim that their own counsel, Joel Reese, is somehow immune from being deposed," apparently "because Mr. Reese, unlike Mr. Bailey, serves as 'lead' trial counsel in this matter." Dkt. No. 183 at 2. According to Plaintiff, "[t]his is a distinction without a difference," where "Mr. Reese's status as Defendant's lead counsel does not insulate him from being deposed"; where "Mr. Reese was intimately involved in the facts made the basis of Sambuca's causes of action" and "[t]he information and facts that Mr. Reese obtained as a pre-litigation witness/actor regarding relevant events (e.g., the lease renewal) are discoverable"; and where "[t]he Court allowed Defendants to depose Sambuca's counsel for the purpose of obtaining this exact information." *Id.*

Plaintiff requests that the Court deny Defendants' Motion to Quash, order Mr. Reese to appear for a deposition, and grant Plaintiff all other relief to which it is entitled, including its costs and attorneys' fees incurred in responding to Defendants' Motion to Quash.

Defendants reply that Plaintiff's response demonstrates that "Sambuca's attempt to depose Mr. Reese is retaliatory, is not critical to Sambuca's case, and serves no purpose beyond harassing Defendants in response to their legitimate request for Mr. Bailey's deposition." Dkt. No. 185 at 1. According to Defendants, "[f]urther proving the point is that Sambuca abruptly cancelled the deposition of Defendants' corporate lawyer, Vicky Gunning, less than 24 hours before the deposition was scheduled to take place," where "Ms. Gunning, as Mr. Bailey's contact during the lease renewal process and Defendants' counterpart to Mr. Bailey, was a proper deponent and one to which Defendants had no objection" and "[t]hat Sambuca has elected not to get its supposedly

critical information from her speaks volumes to Sambuca's true intent of harassing Mr. Reese, interfering with Defendants' trial preparation, and attempting to disqualify Defendants' lead trial counsel." *Id.* at 1-2.

Defendants request that the Court (1) quash the Subpoena served on Mr. Reese; (2) issue an order protecting Mr. Reese from Sambuca's requested deposition; and (3) award Defendants their costs and attorneys' fees incurred in bringing this Motion to Quash.

## Legal Standards

Pursuant to Federal Rule of Civil Procedure 45, a party may serve a subpoena commanding a nonparty "to whom it is directed to ... attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." FED. R. CIV. P. 45(a)(1)(A)(iii).

Under Federal Rule of Civil Procedure 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). The moving party has the burden of proof. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Williams*, 178 F.R.D. at 109. "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

Under Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

Federal Rule of Civil Procedure Rule 26(c) has been amended, effective December 1, 2015. As amended, Rule 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is

conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending. The Court finds that applying the standards of Rule 26, as amended, to Defendants' Motion to Quash is both just and practicable.

Further, for the reasons the Court has recently explained, the Court concludes that the amendments to Rule 26 do not alter the burdens discussed above. *See Celanese Corp. v. Clariant Corp.*, No. 3:14-cv-4165-M, 2016 WL 1074573, at *3 (N.D. Tex. Mar. 18, 2016); *Longoria v. Cty. of Dallas*, No. 3:14-cv-3111-L, 2016 WL 728559, at *3 (N.D. Tex. Feb. 24, 2016).

A party, although not in possession or control of the materials sought in a subpoena and not the person to whom the subpoena is directed, has standing to file a motion to quash or modify under Federal Rule of Civil Procedure 45(d)(3) if he has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Ass'n of Am. Physicians & Surgs., Inc. v. Tex. Med. Bd.*, No. 5:07CV191, 2008 WL 2944671, at *1 (E.D. Tex. July 25, 2008). The Court finds that Defendants have a sufficient interest in their attorney's testimony under the Subpoena to have standing to file their Motion to Quash.

-8-

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A). Rules 37(a)(5)(B)-(C) further provide in pertinent part that, "[i]f the motion is denied, the court ... must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

And Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26(c) for a protective order, Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

### Analysis

As the Court previously explained, *see* Dkt. No. 162, the United States Court of Appeals for the Fifth Circuit has observed that, "[g]enerally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999).

A few months after issuing its decision in *Theriot*, the Fifth Circuit further addressed the issue in *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999), explaining that, "[b]ecause depositions of opposing counsel are disfavored generally and should be permitted in only limited circumstances, one would suspect that a request to depose opposing counsel generally would provide a district court with good cause to issue a protective order." 197 F.3d at 209 (footnotes omitted). The Court of Appeals noted the analysis adopted by the United States Court of Appeals for the Eighth Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), forbidding a party from deposing opposing counsel unless (1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. *See id.* at 208. But the Fifth Circuit in *Nguyen* held only that, in that case, the district court "did not abuse its discretion in authorizing the depositions of defense counsel, even assuming the applicability of the *Shelton* inquiry." *Id.* at 209 (footnote omitted); *cf. Murphy v. Adelphia Recovery Trust*, No. 3:09-mc-105-B, 2009 WL 4755368, at *2 (N.D. Tex. Nov. 3, 2009) ("While the Fifth Circuit has not explicitly adopted *Shelton*, it has indicated

that the same three factors inform a district court's discretion in determining whether to authorize the deposition of opposing counsel." (citing *Nguyen*, 197 F.3d at 209)).

Following these decisions, district court decisions in this circuit have noted that "[t]he Federal Rules of Civil Procedure do not specifically prohibit the taking of an opposing counsel's deposition in a case," *Nat'l W. Life Ins. Co. v. W. Nat. Life Ins. Co.*, No. A-09-CA-711 LY, 2010 WL 5174366, at *2 (W.D. Tex. Dec. 13, 2010), and that "[t]he Federal Rules of Civil Procedure as well as Fifth Circuit precedent do not expressly prohibit the taking of in-house counsel depositions" and, "[a]lthough several districts within the Fifth Circuit caution about the taking of in-house counsel and/or opposing counsel depositions, there is not an express prohibition thereon," *Premier Dealer Servs., Inc. v. Duhon*, No. Civ. A. 12-1498, 2013 WL 5720354, at *4 (E.D. La. Oct. 21, 2013); *see also Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, No. Civ. A. 12-257-JJB-RLB, 2014 WL 199626, at *1-*2 (M.D. La. Jan. 15, 2014) ("Rule 30 of the Federal Rules of Civil Procedure allows for discovery depositions to be taken of 'any person.' Fed. R. Civ. P. 30(a)(1). The Rule itself does not preclude depositions of attorneys. The federal courts, however, disfavor depositions of a party's attorney and allow them only in limited circumstances. In addition, a deponent need not answer a question in a deposition when necessary to 'preserve a privilege.' Fed. R. Civ. P. 30(c)(2).") (citation omitted)).

District courts in the Fifth Circuit, following *Nguyen*, have applied the three-prong test established by the Eighth Circuit in *Shelton* to determine circumstances when in-house counsel or other opposing counsel should be subject to

being deposed, but "several courts within the Fifth Circuit have found that when an attorney's role in a case is more akin to a 'mere business advisor,' for a company in an action, he does not constitute 'opposing counsel,' and therefore *Shelton* factors do not warrant an application." *Premier Dealer Servs., Inc.*, 2013 WL 5720354, at *4; *see also Hall v. La.*, No. Civ. A. 12-657-BAJ-RLB, 2014 WL 1652791, at *4-*5 (M.D. La. Apr. 23, 2014) (applying *Shelton* test). And district court decisions in this circuit, following *Shelton* and its progeny, have concluded that "[t]he critical factor in determining whether the Shelton test applies is not the status of the lawyer as 'trial counsel,' but the extent of the lawyer's involvement in the pending litigation" and that, "[i]f the lawyer has knowledge of relevant facts related to the subject matter of the litigation, and is merely advising the client with respect to the lawsuit, *Shelton* does not apply," but that, "if the lawyer is actively involved in trial preparation, she cannot be deposed unless the *Shelton* criteria are met." *Murphy*, 2009 WL 4755368, at *3.

Plaintiff asks the Court to apply an additional exception to *Shelton*'s applicability, arguing that, based on Mr. Reese's extensive pre-litigation involvement in matters relevant to this lawsuit, the *Shelton* analysis is inapplicable where, if an attorney is a witness of or actor in prelitigation conduct, he may be deposed just like as any other witness. Plaintiff further asserts that a party cannot insulate an attorney who has otherwise relevant knowledge from the processes of discovery by having that attorney file an appearance in the pending case.

But it was Mr. Bailey who only made an appearance in this case after Defendants sought his deposition. *See* Dkt. No. 165. Mr. Reese signed the notice of removal initiating the proceedings in this Court. *See* Dkt. No. 1.

And the Court is not persuaded by the limited case law suggesting a prelitigation-knowledge exception to the *Shelton* test's applicability to a party's trial counsel. What is clear under Fifth Circuit law is that depositions of opposing counsel are disfavored generally and should be permitted in only limited circumstances. In ruling on the motions to quash the subpoena for Mr. Bailey's deposition, the Court assumed that the *Shelton* test applies in this jurisdiction. Because of the posture of the current Motion to Quash and the parties' arguments, the Court here further concludes that the Court should apply the *Shelton* test here as to the deposition sought of Mr. Reese, at the least as a useful standard to implement the Fifth Circuit's general guidance in *Theriot* and *Nguyen* as to protective orders and quashal orders in the particular context of deposing opposing counsel. The Court further determines that the Fifth Circuit's guidance in those decisions and the *Shelton* test clearly apply to Mr. Reese as Defendants' trial counsel.

The Court well understands Plaintiff's desire to depose Mr. Reese now that Defendants have deposed Mr. Bailey and Plaintiff's argument for allowing this deposition as a matter of fairness. And certain communications between Mr. Reese and Mr. Bailey are alleged as a basis for Plaintiff's claims in its complaint.

But the Court determines that Plaintiff has failed to make the showing required by *Theriot* and *Nguyen* and the *Shelton* test and, further, that Defendants have

-13-

established good cause to quash the subpoena for, and issue a protective order as to, Mr. Reese's deposition.

In particular, Plaintiff has failed to show that no other means exist to obtain the information that they seek from Mr. Reese's deposition testimony and that that information is crucial to the preparation of the case. Plaintiff only sought Mr. Reese's deposition after Defendants were permitted to depose Mr. Bailey, and Plaintiff still suggests that depositions of attorneys should not have been permitted in this case – or at least that Plaintiff laments that Defendants first sought its attorneys' testimony. Plaintiff also sought the depositions of Defendants' other counsel Vicky Gunning (whose communications with Mr. Bailey Plaintiff also alleges as a basis for its claims in its complaint) and Steven Carp and then – for reasons still unexplained – cancelled those depositions. Further, unlike Defendants' showing of its failed efforts when seeking to depose Mr. Bailey, Plaintiff has not shown that it tried and failed to obtain the information from another source such as Defendants' corporate representative(s), which could be an adequate substitute under these particular circumstances for Mr. Reese's testimony (even though it was not for Mr. Bailey's) as to his recollection of the content and circumstances surrounding a communication with Mr. Bailey.

Additionally, at oral argument, Mr. Reese unequivocally stipulated that he would not take the witness stand at trial. In contrast, during oral argument on the motions to quash the subpoena for Mr. Bailey's deposition, Plaintiff would not stipulate that they would not rely on Mr. Bailey's oral communications in support of their claims at trial. There is, then, not the same danger of prejudice to Plaintiff of hearing evidence

-14-

from Mr. Reese for the first time at trial that was presented in the context of Mr. Bailey's deposition. But there is danger of prejudice to Defendants from having their trial counsel – who has been counsel of record in this case in this Court from the beginning – made a witness.

In short, in light of the Fifth Circuit's observations that depositions of opposing counsel are disfavored generally and that one would suspect that a request to depose opposing counsel generally would provide a district court with good cause to issue a protective order, the Court, in its discretion, determines that Plaintiff has not shown that these are some of the limited circumstances in which such a deposition should be permitted and further determines that Defendants have shown that this is not an instance of those limited circumstances and that there is good cause to quash the subpoena and issue a protective order to preclude Mr. Reese from being required to appear for and testify at Plaintiff's requested deposition.

The Court also determines that, under all of the circumstances presented here, the parties should bear their own expenses, including attorneys' fees, in connection with the Motion to Quash.

## Conclusion

For the reasons explained above, the Court GRANTS Defendants' Motion to Quash Subpoena to Joel Reese [Dkt. No. 176], quashes the Subpoena served on Mr. Reese, and hereby issues an order protecting Mr. Reese from Plaintiff's requested deposition.

SO ORDERED.

DATED: May 26, 2016

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE