IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MCKINNEY/PEARL RESTAURANT PARTNERS, L.P., | § § § | |
| Plaintiff, | § | |
| v. | § | No. 3:14-cv-02498-B |
| METROPOLITAN LIFE INSURANCE COMPANY, CBRE, INC., and MCPP 2100 MCKINNEY, LLC, | § § § § | |
| Defendants. | § § | |

**DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF
DAVID CANNON AND DAVID FINCANNON AND BRIEF IN SUPPORT**

Joel W. Reese
Tyler J. Bexley
Katie Galaviz
**REESE GORDON MARKETOS LLP**
750 N. St. Paul Street, Suite 610
Dallas, Texas 75201
(214) 382-9810

**ATTORNEYS FOR DEFENDANTS
METROPOLITAN LIFE INSURANCE COMPANY,
CBRE, INC. AND MCPP 2100 MCKINNEY, LLC**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    I. Factual Background Relating to this Motion ................................................................. 2

        A.  The Lease Agreement. .......................................................................................... 2

        B.  The Dispute. .......................................................................................................... 3

        C.  Sambuca's Claims and Allegations in this Action. ............................................... 3

    II.   David Cannon's Opinions ........................................................................................ 5

    III.  David Fincannon's Opinions ..................................................................................... 6

ARGUMENT ....................................................................................................................... 6

    I.   The Court Should Exclude David Cannon's Proffered Opinions. ........................................ 6

        A.  Cannon's opinions regarding the construction and effect of the ADAAG and the TAS are inadmissible conclusions of law. .................................................................. 7

        B.  Cannon's opinion the certain locations on the Premises violate the 1991 ADAAG, the 1994 TAS or the Dallas Building Code is also a legal conclusion ...................... 8

        C.  Cannon's opinion that all areas of the Restaurant Building's floor must maintain compliance with the 2% slope requirement in the 1994 TAS is speculative and unreliable. .................................................................................................................. 9

        D.  Cannon's opinions are not relevant to the claims and defenses in this action. ......... 9

    II.   The Court Should Exclude David Fincannon's Proffered Opinions. ............................... 10

        A.  Fincannon is not qualified to provide an opinion regarding the future condition of the Restaurant Building's structure. ........................................................................ 11

        B.  Fincannon's opinions regarding the future condition of the Restaurant Building's structure are speculative and unreliable. ................................................................... 11

        C.  The Court should exclude Fincannon's opinions because they are not relevant. ..... 13

    CONCLUSION AND PRAYER ......................................................................................... 14

# TABLE OF AUTHORITIES

**CASE LAW**

*Askanase v. Fatjo*
  130 F.3d 657 (5th Cir. 1997) ................................................................. 7

*Burkhart v. Washington Metro. Area Transit Auth.*
  112 F.3d 1207 (D.C. Cir. 1997) ............................................................ 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
  509 U.S. 579, 112 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ...................... 10

*Goodman v. Harris Cnty.*
  571 F.3d 388 (5th Cir. 2009) ................................................................. 8

*Green v. CBS Broadcasting, Inc.*
  No. 3:98-cv-2740-T, 2000 WL 33242748 (N.D. Tex. Dec. 19, 2000) .................... 9

*Lofton v. McNeil Consumer & Specialty Pharm.*
  No. 3:05-cv-1531-L, 2008 WL 4878066 (N.D. Tex. July 25, 2008) .................... 12

*Nunn v. State Farm*
  No. 3:08-cv-1486-D, 2010 WL 2540754 (N.D. Tex. June 22, 2010) .................... 12

*Owen v. Kerr-McGee Corp.*
  698 F.2d 236 (5th Cir. 1983) ................................................................. 8

*Robinson v. EMC Mort. Co.*
  No. 3:10-cv-2140-L, 2013 WL 1245863 (N.D. Tex. Mar. 26, 2013) .................... 7

*Sapp v. MHI Partnership, Ltd.*
  199 F.Supp.2d 578, 588 (N.D. Tex. 2002) ............................................ 8

*Snap-Drape, Inc. v. Comm'r of Internal Revenue*
  98 F.3d 194 (5th Cir. 1996) ................................................................... 8

*Wellogix, Inc. v. Accenture, L.L.P.*
  716 F.3d 867 (5th Cir. 2013) ................................................................. 10

**FEDERAL RULES OF EVIDENCE**

FED. R. EVID. 104(a) ................................................................................ 7

FED. R. EVID. 401(a) .......................................................................... 7, 10

FED. R. EVID. 402 ................................................................................................................. 7

FED. R. EVID. 702 ................................................................................................... 7, 10, 11, 12

FED. R. EVID. 703 ................................................................................................................. 7

Defendants Metropolitan Life Insurance Company ("MetLife"), CBRE, Inc. ("CBRE"), and MCPP 2100 McKinney, LLC ("MCPP") (together, "Defendants") file this Motion to Exclude the Expert Testimony of Plaintiff McKinney/Pearl Restaurant Partners, L.P.'s ("Sambuca") proffered experts David Cannon and David Fincannon.

## INTRODUCTION

Sambuca and MCPP are parties to a lease for the restaurant building located at the southwest corner of McKinney Avenue and Pearl Street in the Uptown Area of Dallas, Texas. Sambuca contends that MCPP and MetLife (MCPP's predecessor-in-interest) breached the lease by failing to maintain the structural system of the restaurant building in good condition and repair. Sambuca also contends that MetLife and MCPP hindered Sambuca's occupation and enjoyment of the restaurant building in violation of the express warranty of quiet enjoyment contained in the lease.

To support its claims, Sambuca designated David Cannon as an expert witness to testify that certain elements of the premises do not comply with the design standards promulgated under the Americans with Disabilities Act ("ADA") and its Texas equivalent. Cannon's opinions should be excluded because they constitute improper legal conclusions—an expert witness is not allowed to testify that a specific law applies or that a party failed to comply with the law. Cannon's opinions should also be excluded because they are not relevant to the parties' claims and defenses.

Sambuca designated David Fincannon to testify that the building's alleged structural deficiencies will continue to promote pest "problems" unless the foundation is replaced. Fincannon's opinions should be stricken for three reasons. First, Fincannon is not qualified to give opinions regarding the integrity of the Restaurant Building's structural system. Second,

1

Fincannon's opinions are speculative and not helpful to the jury. And third, Fincannon's opinions are not relevant to any issue in this case.

## BACKGROUND

### I.      Factual Background Relating to this Motion

The factual background of this dispute is set forth in Defendants' recently filed Consolidated Statement of Facts in Support of their Motions for Summary Judgment [Dkt. #202], which Defendants incorporate by reference. Defendants also provide the following brief summary of facts, which are particularly pertinent to this Motion.[1]

### A.      The Lease Agreement.

Sambuca accepted the Premises in its "AS IS, WHERE IS" condition and "WITH ALL FAULTS."[2] Accordingly, the Lease places most of the responsibility for repairing and maintaining the Premises on Sambuca. The Lease provides that the landlord "shall not be required to make any repairs to the Premises or to Tenant's improvements or Tenant's Property" and that Sambuca "shall be responsible, at its sole cost and expense for keeping and maintaining the Premises including, without limitation, utility systems, within the Premises, and Tenant's Property in a good, clean, safe and sanitary condition and making any necessary or required repairs thereto."[3] Sambuca also agreed to bear the risk of complying with the ADA and is responsible for ensuring the Restaurant Building is accessible for customers with disabilities.[4]

---

[1] "App." refers to the Appendix in Support of Defendants' Motions for Summary Judgment [Dkt. ##200, 201, 203, 204, 205, 209].   "Cannon/Fincannon App." refers to the Appendix in Support of Defendants' Motion to Exclude Expert Testimony of David Cannon and David Fincannon, which is filed contemporaneously with this Motion.  For consistency, Defendants use the same defined terms as used in the Motions for Summary Judgment.

[2] App. 1853 (Lease at § 6).

[3] App. 1854 (Lease at § 7(a)).

[4] App. 1855 (Lease at § 7(a)).

Last, Sambuca, at its sole cost and expense, is responsible for obtaining and maintaining pest control services to regularly exterminate the Premises for all pests, insects, and other vermin.[5]

The landlord, on the other hand, is responsible for keeping and maintaining "in good condition and repair: "(A) the roof and structural system of the Restaurant Building, (B) the primary water and sewer systems serving the Premises up to, but not into, the Premises, and (C) the outdoor common areas of the Project (inclusive of parking areas and landscaping)" (the "Landlord Repair Provision").[6]

### B.    The Dispute.

Since June 2009, MetLife has spent hundreds of thousands of dollars and MetLife and CBRE, its property manager, have expended hundreds of man-hours performing investigations, tests, and repairs in order to identify the cause of foundation and plumbing issues about which Sambuca complains.[7] To this day, there is no clear answer. Nevertheless, MetLife believes that the repairs that it has made—including the replacement of the subsurface main drain lines—have alleviated the problems and satisfied MetLife's obligations under the lease. Sambuca, on the other hand, believes that MetLife should replace the entire slab and rebuild the interior of the Restaurant Building.[8]

### C.    Sambuca's Claims and Allegations in this Action.

On October 7, 2013, Sambuca filed this action against MetLife in the 191st Judicial District Court of Dallas County, Texas asserting claims for breach of contract and anticipatory

---

[5] App. 1880 (Lease at § 24(n)).

[6] App. 1855 (Lease at § 7(b)).

[7] *See generally* Dkt. 202, Defs.' Consolidated Statement of Facts, §§ I-W.

[8] App. 0023 (Bailey Dep. at 48:6-49:18).  Lee wrote a letter to Sambuca's lawyer, Wesley Bailey, shortly after this dispute arose, setting forth Sambuca's position that the entire slab should be removed and replaced.   App. 0043; App. 0023 (Bailey Dep. at 48:7-22).  Two year later, Lee would make the same conclusion in his expert report, *i.e.*, that Sambuca should get a brand new restaurant interior. App. 1401 (Lee Dep. at 13:19-14:22); App. 1444.

breach of contract.[9] Sambuca complained that, "[s]ince shortly after the inception of the Lease, the Leased Premises have been plagued by problems"[10] and that MetLife had breached the Landlord Repair Provision.[11]

Sambuca claims that the movement of the structural system has caused "defective conditions," including, "inoperable doors, uneven floors, cracks in both interior and exterior walls, cracks in floors, sagging ceiling tiles, damaged air conditioning ducts, separation of walls from the floor, sewage odors, reoccurring large gap under an exterior door to the kitchen, cracking and breaking plumbing pipes, persistent movement and elevation changes in the floor, hanging interior door frames, falling wall tiles, gaps along the exterior of the building, and elevation changes in the parking lot."[12] Sambuca further claims that Defendants' alleged failure to corrected the continued structural movement and repair the defective conditions has "directly damaged and continued to damage Sambuca's business, its reputation, and the overall Sambuca brand."[13]

With respect to accessibility specifically, Sambuca's live pleading states that after the main drain line replacement, "the differential elevation in the slab had become so drastic that it was impairing accessibility."[14] With respect to pest activity, Sambuca's sole allegation is that sometime after the main drain line replacement, "there was now a large crack under an exterior

---

[9] App. 0804.

[10] App. 0806.

[11] App. 0812.

[12] Cannon/Fincannon App. 004 (Pl.'s 1st Supp. Obj. and Ans. To MetLife's 1st Set of Interrogatories, No. 2).

[13] Cannon/Fincannon App. 007 (Pl.'s 1st Supp. Obj. and Ans. To MetLife's 1st Set of Interrogatories, No. 7); 4th Am. Compl. ¶ 38.

[14] Pl.'s 4th Am. Compl. ¶ 27.

door to the kitchen through which rodents and insects *could* enter the building. This created *potential* Health and Safety Code violations, requiring constant repairs."[15]

## II.    David Cannon's Opinions

Sambuca hired David Cannon to "evaluate TAS accessibility compliance of the public area flooring and handicap parking spaces; and opine on building code conformance for the exits at the Sambuca restaurant."[16] Cannon is a forensic architect.[17] Cannon provided six primary opinions:

1. The Restaurant Building must be in compliance with the design standards contained in the 1991 Americans with Disabilities Act Accessibility Guidelines ("1991 ADAAG") and the 1994 Texas Accessibility Standards (the "1994 TAS").[18]

2. In order to be in legal conformance with the 1994 TAS and the 1991 ADAAG, all of the Restaurant Building's floor surfaces must have less than a 2% slope at all times.[19]

3. At five locations along the bars, at four locations near the seating niches, at one location on the dance floor, and at one location in the hallway to the restroom, the measured cross-slope of the Restaurant Building's floor was greater than 2% and, therefore, the floor in those areas does not comply with the 1991 ADAAG and the 1994 TAS.[20]

4. In the parking lot on the Premises, at one location within the passenger loading zone and two locations within the north accessible parking space the measured cross-slope was greater than 2% and, therefore, those areas do not comply with the 1991 ADAAG and the 1994 TAS.[21]

5. At the expansion joint between the sidewalk and passenger loading zone for the accessible parking spaces, a change in level greater than 1/2" was measured and, therefore, this location does not comply with the 1991 ADAAG and the 1994 TAS.[22]

---

[15] *Id.* (emphasis added); *see also* Cannon/Fincannon App. 015 (K. Forsythe Dep. at 143:21-145:19).

[16] Cannon/Fincannon App. 023.

[17] Cannon/Fincannon App. 045 (Cannon Dep. at 5:23-6:24).

[18] Cannon/Fincannon App. 034.

[19] Cannon/Fincannon App. 037.

[20] Cannon/Fincannon App. 026-31; 035

[21] Cannon/Fincannon App. 031-32; 036.

[22] Cannon/Fincannon App. 032; 036.

6.  The exterior of the kitchen exit door on the east side of the Restaurant Building is missing a solid landing and, therefore, is in violation of the 1991 Uniform Building Code ("1991 UBC") and the 1997 Uniform Building Code ("1997 UBC").

## III.    David Fincannon's Opinions

Sambuca identified David Fincannon as an expert witness to testify regarding "pest related issues in relationship to the structure's movement."[23] Fincannon provides two primary opinions:  (1) Sambuca has taken appropriate action in its efforts to address pest and rodent related infestations; and (2) the Restaurant Building's structural deficiencies will continue to promote pest problems unless the foundation is replaced.[24] In his rebuttal report, issued 5 months after his initial report, Fincannon admitted that repairs had been made to correct the structural deficiencies he had originally identified as creating pest conducive conditions at the Restaurant Building.[25] Fincannon did not, however, prepare an opinion regarding the impact of the repairs on the level of pest activity observed at the Restaurant Building.[26]

## ARGUMENT

The testimony of David Cannon and David Fincannon is inadmissible under Federal Rules of Evidence 104(a), 401, 402, 702, and 703. Their opinions (in report and testimonial form) are neither relevant nor reliable. Defendants therefore request that the Court exclude their opinions from trial.

## I.      The Court Should Exclude David Cannon's Proffered Opinions.

David Cannon's opinions should be excluded because they constitute improper legal conclusions—an expert witness is not allowed to testify that a specific law applies or that a party

---

[23] Cannon/Fincannon App. 073.

[24] Id.

[25] Cannon/Fincannon App. 109.

[26] Cannon/Fincannon App. 130 (Fincannon Dep. at 79:21-25); Cannon/Fincannon App. 131 (Fincannon Dep. at Dep. 80:12-15).

6

failed to comply with the law. Cannon's opinions should also be excluded because they are unreliable and are not relevant to the parties' claims and defenses.

> ### A.   Cannon's opinions regarding the construction and effect of the ADAAG and the TAS are inadmissible conclusions of law.

Cannon's opinions that the Restaurant Building must remain in compliance with the 1991 ADAAG and the 1994 TAS and that all of the Restaurant Building's flooring must have less than a 2% slope at all times are inadmissible conclusions of law.

Experts cannot assert what law governs an issue or what the applicable law means. *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) ("Our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury.). This is because the construction and legal effect of a statute or regulation are both questions of law. *See, e.g., Robinson v. EMC Mort. Co.*, No. 3:10-cv-2140-L, 2013 WL 1245863, at *7 (N.D. Tex. Mar. 26, 2013) (holding that experts' statements as to what the FCRA required exceeded the boundaries of permissible expert testimony). Questions of law are for the court to decide. *Id.* Expert opinions that render conclusions of law are not helpful to the jury and are inadmissible. *See Snap-Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 198 (5th Cir. 1996) (Rule 704 "does not allow an expert to render conclusions of law."); *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("an expert may never render conclusions of law").

Cannon's interpretation of the 1991 ADAAG and the 1994 TAS and his opinion as to the legal effect of those standards is nothing more than a legal conclusion. In rendering these opinions, Cannon is improperly opining on questions of law that fall within this Court's exclusive province.

**B.      Cannon's opinion the certain locations on the Premises violate the 1991 ADAAG, the 1994 TAS, or the Dallas Building Code is also a legal conclusion.**

Cannon's opinions should be excluded because they consist solely of legal conclusions regarding the Restaurant Building's compliance with the TAS, the ADA, or the Dallas Building Code. For example, Cannon opines, "[d]ue to cracking and movement in the foundation, the flooring along both bars, at both seating niches, at the dance floor, and in the hallway to the restrooms *is in violation of the 1994 TAS and the 1991 ADAAG, and needs to be remediated to enable legal accessibility for customers with disabilities.*"[27]

"Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). The Federal Rules do not permit expert witnesses to offer legal conclusions regarding whether or not a party complied with the accessibility standards. *See Sapp v. MHI Partnership, Ltd.*, 199 F.Supp.2d 578, 588 (N.D. Tex. 2002) (Lynn, J.) (excluding expert's opinions regarding facility's compliance with the TAS); *see also Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) ("an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied."); *Green v. CBS Broadcasting, Inc.*, No. 3:98-cv-2740-T, 2000 WL 33242748, at 4 (N.D. Tex. Dec. 19, 2000) (opinion that defendants' conduct was negligent and malicious was inadmissible). Cannon's opinion that specific locations on the Premises violate the TAS, the ADAAG, or the Dallas Building Code is an inadmissible legal conclusion and should be excluded.

---

[27] Cannon/Fincannon App. 038 (emphasis added).

**C.      Cannon's opinion that all areas of the Restaurant Building's floor must maintain compliance with the 2% slope standard in the 1994 TAS is speculative and unreliable.**

Cannon's assertion that the entire floor of the Restaurant Building must be maintained at a slope no greater than 2% is not an expert opinion that derives from any analysis or specialized knowledge. Instead, it is unsubstantiated speculation. Cannon concedes that the language of the statute does not support his interpretation—there is no provision in the 1994 TAS requiring a building owner to maintain compliance with the 1994 TAS design standards after a building has been constructed or a remodeled.[28] Cannon also admitted that his interpretation of the 1994 TAS was not based on his experience. He testified that he has never encountered a situation where a building was found to be out of compliance with the TAS because of post-construction changes in the level of the floor.[29] In fact, Cannon even testified that the opposite is true—building owners are not expected to know the standards and maintain their buildings within the standards.[30] Cannon's opinion its not supported by any facts or theory. It is his personal opinion and, as such, it is not helpful to the jury and should be excluded.

**D.      Cannon's opinions are not relevant to the claims and defenses in this action.**

Expert witnesses must testify on issues that are relevant to the case and, which, in turn, help the trier-of-fact to resolve a fact issue. FED. R. EVID. 702. Evidence is relevant if "it has any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Wellogix, Inc. v. Accenture,*

---

[28] Cannon/Fincannon App. 058 (Cannon Dep. 57:17-19). The parties agree that the 1994 TAS applied during the construction and remodel of the Restaurant Building and that the Texas Department of Licensing and Registration certified the Restaurant Building as being compliant at both of those times. *Id.* (Cannon Dep. 59:10-20).

[29] *Id.* (Cannon Dep. at 56:3-10).

[30] *Id.* (Cannon Dep. 57:20-25) ("…typically, you know, a restaurant owner would not be expected to know all of the building codes…and be expected to maintain that the building stays within building codes at all times. I mean, that's not their expertise.").

*L.L.P.*, 716 F.3d 867, 882 (5th Cir. 2013) (quoting FED. R. EVID. 401(a)). On the other hand, "expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593, 112 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Cannon's opinions do not make any fact that is of consequence to the determination of this action more or less probable. Sambuca has not been harmed by the Restaurant Building's alleged noncompliance with the 1991 ADAAG, the 1994 TAS, or the Dallas Building Code. There have been no customer complaints about the slope of the floor.[31] There have been no reports of injuries resulting from the slope of the floor.[32] Sambuca has not been cited or sued by the governmental bodies responsible for enforcing the 1991 ADAAG, the 1994 TAS, or the Dallas Building Code.[33] Cannon's opinions are not relevant and should be excluded.

## II.    The Court Should Exclude David Fincannon's Proffered Opinions.

David Fincannon's primary opinion is that the Restaurant Building's structural deficiencies will continue to promote rodent, cockroach, and fruit fly infestations. Fincannon originally identified cracks in the floor, water flowing towards the walls instead of the drains, damaged drain pipes, and gaps in the walls and around the doors as creating "pest conducive conditions."[34] Fincannon alleges that these conditions could be repaired but the repairs would be

---

[31] Cannon/Fincannon App. 012 (K. Forsythe Dep. at 121:24-123:2).

[32] Cannon/Fincannon App. 013 (K. Forsythe Dep. at 135:8-11) (Q. You're not aware today of any injuries that have occurred on the leased premises due to the sloping slab and only the slope? A. No.).

[33] Cannon/Fincannon App. 017 (K. Forsythe Dep. at 185:11-13) (Q. Has Sambuca ever received any citation from a government entity about the floor slab in the restaurant? A. No.).

[34] Cannon/Fincannon App. 102-03.

"short lived."[35] Therefore, he concluded that to remedy these conditions, the walls would need to be repaired and the foundation would need replacement "to function properly."[36]

Fincannon's opinions should be stricken for three reasons. First, Fincannon is not qualified to give opinions regarding the integrity of the Restaurant Building's structural system. Second, Fincannon's opinions are speculative and not helpful to the jury. And third, Fincannon's opinions are not relevant to any issue in this case.

### A.    Fincannon is not qualified to provide an opinion regarding the future condition of the Restaurant Building's structure.

Fincannon's opinions that any repairs to the Restaurant Building would be short lived and that the foundation needs to be replaced to "function properly" should be excluded because Fincannon is not qualified to give such opinions. A witness testifying under Rule 702 must be qualified as an expert by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Fincannon is not a structural engineer.[37] He has no experience in foundation repair and has never recommended that a foundation be replaced to address pest-related issues.[38] At his deposition, Fincannon even acknowledged that he was not qualified to give an opinion regarding the integrity of the building.[39] Given the foregoing, Fincannon is not qualified to render an opinion as to the future condition of the Restaurant Building.

### B.    Fincannon's opinions regarding the future condition of the Restaurant Building's structure are speculative and unreliable.

Fincannon's opinion that the Restaurant Building will be conducive to pests in the future is not helpful because it is primarily based on his personal observations regarding the state of the

---

[35] Cannon/Fincannon App. 102.

[36] Cannon/Fincannon App. 103.

[37] Cannon/Fincannon App. 128 (Fincannon Dep. at 70:3-11)

[38] Cannon/Fincannon App. 139 (Fincannon Dep. at 113:15-23).

[39] Cannon/Fincannon App. 111; 128 (Fincannon Dep. at 70:12-15) (Q. Would you agree that you're not qualified to give an opinion regarding the integrity of the building. A. That's correct.).

building. It is well established that to be admissible, an expert's opinion must be reliable. To be reliable, an opinion must constitute "more than just subjective belief or unsupported speculation." *Nunn v. State Farm*, No. 3:08-cv-1486-D, 2010 WL 2540754, at *10 (N.D. Tex. June 22, 2010); *see also Lofton v. McNeil Consumer & Specialty Pharm.*, No. 3:05-cv-1531-L, 2008 WL 4878066, at *6 (N.D. Tex. July 25, 2008) (excluding experts' personal opinions because they are unreliable).

Fincannon's opinions are based upon visual observations he made on three visits to the Premises and his review of service reports prepared by EcoLab, the pest control company retained by Sambuca.[40] Fincannon did not rely upon the opinions of the engineering experts retained by Sambuca.[41] And, although Fincannon has extension experience in pest control, he did not rely on any specialized knowledge in forming his opinions. Instead, Fincannon's opinions are simply guesses. For example, Fincannon alleges that water flowing towards the walls in the kitchen creates a condition conducive to fruit flies.[42] But, Fincannon did not observe water flowing towards the walls, he did not observe any of the subsurface conditions that he asserts are responsible for the flow of the water, and he had not reviewed any documents that support this conclusion prior to issuing his report.[43] Fincannon's guesses and personal opinions are unreliable and speculative. Therefore, they are not helpful to the jury and should be excluded.

---

[40] Cannon/Fincannon App. 118 (Fincannon Dep. at 25:14-20); 128 (Fincannon Dep. at 70:20-71:2).

[41] Cannon/Fincannon App. 134 (Fincannon Dep. at 95:15-19).

[42] *See e.g.,* Cannon/Fincannon App. 102 ("there is no way water is flowing to a drain," "water will be flowing into the wrong areas when daily cleaning occurs," and "when the main drain lines were repaired, the fill soil placed in the area was loose")

[43] Cannon/Fincannon App. 119-20 (Fincannon Dep. at 33:5-13, 34:21-35:5, 35:22-36:10); 127-128 (Fincannon Dep. at 67:15-68:12); 136 (Fincannon Dep. at 101:13-103:21);

**C.      The Court should exclude Fincannon's opinions because they are not relevant.**

Fincannon is not providing an opinion on the reasonableness of the expenses Sambuca incurred for pest control.[44] In fact, Fincannon admitted that the frequency of treatments being applied by Sambuca's pest control service was typical for a restaurant.[45] Fincannon is not providing an opinion that there is a pest control problem at Sambuca. Fincannon testified that the level of pest and rodent activity observed at the restaurant was typical for a commercial restaurant kitchen.[46] Furthermore, there have been no reports of insects or rodents entering the Restaurant Building through the crack under the kitchen door that is mentioned in Sambuca's Complaint.[47] There have been no reports of insects or rodents in the areas of the Restaurant Building frequented by customers.[48] Sambuca has not been cited for Health and Safety Code violations.[49] If anything, the evidence supports a finding that the movement of the foundation has not had any impact on pest activity on the Premises. Moreover, at his deposition, Fincannon essentially neutralized his opinions regarding future pest activity at the Restaurant Building. Fincannon testified that even if the repairs he recommended were made, there would still be the potential for pest infestations at Sambuca because "there's always going to be a possibility of pests in a restaurant."[50]

Fincannon's opinions do not assist the trier-of-fact in understanding the evidence or determining a fact issue in this case and, thus, his opinions should be excluded.

---

[44] Cannon/Fincannon App. 140 (Fincannon Dep. at 116:13-21).

[45] Cannon/Fincannon App. 145 (Fincannon Dep. at 136:22-137:10, 137:18-139:2).

[46] Cannon/Fincannon App. 132 (Fincannon Dep. at 84:7-85:10).

[47] Cannon/Fincannon App. 016 (K. Forsythe Dep. at 145:14-19).

[48] *Id.*

[49] Cannon/Fincannon App. 017 (K. Forsythe Dep. at 186:2-15).

[50] Cannon/Fincannon App. 141 (Fincannon Dep. at 120:15-21).

## CONCLUSION AND PRAYER

For the reasons set forth in this Motion, Defendants respectfully request that the Court grant the Motion, exclude the proffered testimony of Sambuca's experts David Cannon and David Fincannon, and grant Defendants such other and further relief to which they are entitled.

Dated July 13, 2016.                          Respectfully submitted,

**REESE GORDON MARKETOS LLP**

By:___*s/ Katie Galaviz*_____
       Joel W. Reese
       State Bar No. 00788258
       joel.reese@rgmfirm.com
       Tyler J. Bexley
       State Bar No. 24073923
       tyler.bexley@rgmfirm.com
       Katie Galaviz
       State Bar No. 24069620
       katie.galaviz@rgmfirm.com

       750 N. Saint Paul St., Suite 610
       Dallas, Texas 75201-3202
       214.382.9810 telephone
       214.501.0731 facsimile

**ATTORNEYS FOR DEFENDANTS
METROPOLITAN LIFE INSURANCE
COMPANY, CBRE, INC., and MCPP 2100
MCKINNEY, LLC**

## CERTIFICATE OF CONFERENCE

I certify that on June 30, 2016 and July 8, 2016, Tyler Bexley, counsel for the Defendants, conferred with Ryan DeLaune, counsel for Plaintiff, by telephone regarding the relief requested in this Motion. Plaintiff is opposed to the requested relief.

       *s/ Katie Galaviz*_____
       KATIE GALAVIZ

## CERTIFICATE OF SERVICE

The undersigned certifies that, on July 13, 2016, the foregoing document was submitted to the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system (CM/ECF) of the court.  I certify that the document was served on all known counsel of record electronically as authorized by Federal Rule of Civil Procedure 5(b)(2).

*s/ Katie Galaviz*
KATIE GALAVIZ

15